# THE BAR ASSOCIATION OF BALTIMORE CITY
## *v.* POSNER

[Misc. Docket (Subtitle BV) No. 7, September Term, 1974.]

*Decided June 24, 1975.*

*Motion for rehearing filed June 27, 1975; denied July 3, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Harry Goldman, Jr.,* for respondent.

*Patrick A. O'Doherty* for petitioner.

SINGLEY, J., delivered the opinion of the Court.

On 31 July 1974, the Bar Association of Baltimore City (the Bar Association) filed in this Court a petition instituting disciplinary proceedings against Harold Posner, a member of the Maryland bar. On the same day, we entered an order pursuant to Maryland Rule BV 3 b referring the matter for hearing and determination by a three-judge panel of the Eighth Judicial Circuit, Sodaro, Howard and Karwacki, JJ.

Ultimately, after an effort by Posner to remove the case to the United States District Court, which was opposed by the Bar Association and was aborted by an order of the United States District Court dismissing Posner's petition [1] the matter at last came on for hearing before the three-judge panel.

What follows is the finding of fact of the three-judge panel:

"Harold Posner, a member of the Bar of this State since his admission in June of 1950, in September of 1966 was consulted by Maria Nyitrai and Irma Pallay with regard to the administration of the Estate of Leslie Engel, who died intestate a resident of Baltimore County on September 16, 1966 at the age of 83. Leslie Engel had for a long time prior to his death lived with one Anna Dominyak, who had died on January 25, 1966. Mrs. Nyitrai and Mrs. Pallay were her nieces.

"Mr. Posner knew that Leslie Engel had long ago separated from his wife and child who were currently residing in Hungary, and that Anna Dominyak and he were not husband and wife despite their representation to the contrary in the community in which they lived.[2] Notwithstanding

---

1. An appeal to the United States Circuit Court of Appeals for the Fourth Circuit was similarly denied.

2. Just before the matter came on for hearing before us, Posner produced a certificate evidencing the marriage of Engel and Anna Dominyak in Kentucky in 1932. It appears to be conceded that this was a bigamous liaison.

this information, the Respondent entered into an agreement with Nyitrai and Pallay on October 5, 1966 whereby he agreed with them to act as Administrator of the Estate of Leslie Engel at an agreed fee for his services of 10% of the gross estate to be administered pursuant to this agreement. On October 6, 1966 the Respondent qualified as the Administrator of the Estate of the intestate Leslie Engel before the Orphans' Court of Baltimore County. He represented to the Court in his Petition for Letters that Nyitrai and Pallay were nieces and heirs at law of the decedent despite his knowledge that the intestate's sole heirs at law were a surviving widow and daughter.[3]

"On November 11, 1966, Joseph A. Bonis, Esquire, a member of the Bar of this Court, wrote to the Respondent advising him that he represented Zsofia Engel, the widow of the deceased, and Iren Racz, daughter of the deceased, and requested information concerning the decedent's estate. The Respondent replied on November 21, 1966 setting forth what he would require from Mr. Bonis in verification of the status of Mrs. Engel and Mrs. Racz. Despite the fact that Bonis and the Respondent continued to correspond in connection with Bonis' efforts to obtain the proper verification of the status of his clients in order to satisfy the Respondent's requirements through April 27, 1967 when the first meeting between Bonis and Posner took place at Posner's office in Baltimore, Posner on March 7, 1967 filed a First Administration Account with the Orphans' Court of Baltimore County without any notice to Bonis and on April 12, 1967 entered [into] an agreement with Nyitrai whereby he agreed in consideration of a contingent fee of 25% to press a claim for nursing services on

---

**3.** It will be recalled that Engel had survived Mrs. Dominyak by some seven months.

behalf of Nyitrai against the estate of the decedent in the amount of $15,000. On April 19, 1967 he filed a Petition with the Orphans' Court of Baltimore County asking for authority to settle the nursing services claim in the amount of $15,000 attaching thereto an affidavit of Nyitrai which he had prepared and which she had executed on April 12, 1967. Nowhere in the Petition for authority to settle the claim nor in the affidavit of Nyitrai was his status as attorney for the claimant disclosed to the Court.

"At the meeting which took place on April 27, 1967 between Bonis and Posner, Bonis delivered to Posner complete documentation of the pedigree of his clients as the sole heirs at law of Leslie Engel. Notwithstanding this information, Posner failed to disclose his representation of Nyitrai in a claim against the estate for nursing services on which an Order authorizing settlement had been entered by the Orphans' Court of Baltimore County on April 19, 1967. The meeting concluded with Posner's promise to submit a copy of the Second Administration Account which he was going to file in the near future to Bonis prior to its filing.

"Without honoring this promise, the Respondent filed a Second Administration Account of the estate with the Orphans' Court of Baltimore County on May 4, 1967 in which he claimed as a disbursement the $15,000 claim for nursing services which he had been authorized to settle on April 19th and in which he showed a distribution to the widow and daughter of the decedent of the net estate after payment of all claims, including the nursing services claim, in the amount of $5,222.02. The gross estate reported as received in the First Administration Account was in the amount of $25,762.73. When Bonis learned of the filing of the Second Administration Account, he retained Ward B. Coe, Jr., Esquire of the Baltimore Bar to assist him in protection of the

rights of the widow and daughter in the estate of the deceased. Mr. Coe wrote to Posner on June 8, 1967 advising him of the representation of the heirs of the decedent and of their attorney in fact, Bonis. Thereafter exceptions were filed to the First and Second Administration Accounts filed by Posner as Administrator of the estate in the Orphans' Court of Baltimore County along with a Petition for his removal as Administrator. Lengthy proceedings then ensued in the Orphans' Court which culminated on April 13, 1970 with Posner's removal as Administrator of the estate and the appointment of Mr. Bonis as Administrator D.B.N. This action of the Orphans' Court was affirmed on appeal by the Circuit Court for Baltimore County on January 11, 1971.

"During the same period in proceedings which originated in the Orphans' Court but which were assumed on appeal by the Circuit Court for Baltimore County, the Respondent after repeated hearings before the Circuit Court and only after threat of contempt proceedings finally rendered an acceptable final accounting of his administration of the estate on May 19, 1971. At that time in addition to approving the final accounting the Circuit Court for Baltimore County entered judgment in favor of the Administrator D.B.N. against the Respondent for $901.11 representing unauthorized disbursements from the estate by Posner. This judgment was ultimately satisfied by the surety on the Respondent's bond which he had filed in connection with his administration of the estate.

"Meanwhile, Nyitrai, who retained other counsel in September of 1967 to press her claim for nursing services filed against the estate, failed to file suit on her claim until June 4, 1970 at a time when the same was barred by the applicable statute of limitations. Code (1972 Repl. Vol.), Article 57, Section 1; *Nyitrai.v. Bonis,* 266 Md. 295 (1972)."

Based on those findings, the panel recommended that Posner be disbarred.

In his exceptions, Posner wheels up a battery of reasons why he should not be disbarred. Many of the contentions are patently inapposite. His challenges of the disciplinary proceeding as amounting to a denial of due process and of equal protection overlook the purpose of the proceeding: to protect the public by determining a lawyer's fitness to practice law, *In re Barton,* 273 Md. 377, 381, 329 A. 2d 102, 104 (1974); *Maryland State Bar Ass'n v. Sugarman,* 273 Md. 306, 313-15, 329 A. 2d 1, 5 (1974), citing *In re Rouss,* 221 N. Y. 81, 84-85, 116 N. E. 782, 783 (1917). What Posner was entitled to was a full and fair hearing, which he had, *Maryland State Bar Ass'n v. Frank,* 272 Md. 528, 538, 325 A. 2d 718, 723-24 (1974).

The short answer to all of this is that Posner concedes that he represented a creditor of the Engel estate on a contingent fee basis at the same time that he was acting as administrator of the estate, and sought court approval of the settlement of the claim without disclosing that he was representing the claimant; that he withdrew funds from the estate to finance the defense of an action brought to remove him as administrator, amounts which were ultimately repaid by the surety on his administrator's bond, and that he admits that he knew that the allegations as to Engel's heirs and next of kin in the petition which he prepared for the grant of letters of administration were false at the time of the preparation of the petition, with the consequence that a fraud was perpetrated on the orphans' court.

The attempt to raise limitations or laches as a defense overlooks the proceeding's purpose, that of protecting the public, *Anne Arundel County Bar Ass'n v. Collins,* 272 Md. 578, 581-85, 325 A. 2d 724, 727-29 (1974); *In re Weinstein,* 254 Or. 392, 459 P. 2d 548 (1969), *cert. denied,* 398 U. S. 903 (1970).

We similarly reject Posner's contention that he was denied a speedy trial. The applicability of this right to disciplinary proceedings was considered and rejected in *Maryland State*

*Bar Ass'n v. Frank, supra,* 272 Md. at 534-35. Even had this right been available, Posner overlooks the fact that much of the delay was attributable to his own tactics.

The panel determined that Posner was guilty of a violation of the Code of Professional Responsibility adopted by Maryland Rule 1230 on 13 October 1970,[4] particularly as regards Disciplinary Rule 1-102 (A)(4), "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation"; Disciplinary Rule 5-105 (A), "A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, . . ." and (B), "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, . . ." and Disciplinary Rule 9-102 (A) and (B) which requires that a lawyer shall preserve the identity of funds or property belonging to a client and maintain complete records concerning such funds or property.

We have made, as we must, an independent, detailed review of the complete record and have concluded that the factual findings of the three-judge panel are supported by clear and convincing evidence, which is the test to be applied both by the panel and by this Court in disciplinary proceedings instituted under the BV Rules, *Maryland State Bar Ass'n v. Hirsch,* 274 Md. 368, 374, 335 A. 2d 108, 112 (1975); *Maryland State Bar Ass'n v. Frank, supra,* 272 Md. at 538-39; *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 516, 307 A. 2d 677, 680-81 (1973). Accordingly, we adopt the panel's findings of fact as our own as well as the panel's conclusion that Posner had been guilty of a clear violation of the disciplinary rules, which we regard as inescapable. ·

---

4. The Code had been adopted by the House of Delegates of the American Bar Association in August 1969 and by the Maryland State Bar Association in July, 1970. It does not substantially differ, as regards the conduct now before us, from the Canons of Professional Ethics adopted by the American Bar Association in 1908, and as amended. *See* Canons 6, 11, 15 and 22; *see also* Opinions 60, 160 and 167 of the Committee on Professional Ethics and Grievances of the American Bar Association; Informal Opinions 557, 621 and 976.

Once again we refer to language of the Court of Appeals of Kentucky in *In re Stump,* 272 Ky. 593, 598, 114 S.W.2d 1094, 1097 (1938), quoted in part with approval by us in *Maryland State Bar Ass'n v. Sugarman, supra,* 273 Md. at 317. Although *Stump* dealt with the reinstatement of a disbarred attorney, it is nonetheless apposite here:

> "The ultimate and decisive question is always whether the applicant is now of good moral character and is a fit and proper person to be reintrusted with the confidences and privileges of an attorney at law. This question has a broader significance than its purely personal aspect. From time immemorial lawyers have in a peculiar sense been regarded as officers of the court. It is a lawyer's obligation to participate in upholding the integrity, dignity, and purity of the courts. He owes a definite responsibility to the public in the proper administration of justice. It is of utmost importance that the honor and integrity of the legal profession should be preserved and that the lives of its members be without reproach. The malpractice of one reflects dishonor not only upon his brethren, but upon the courts themselves, and creates among the people a distrust of the courts and the bar."

It naturally follows that the recommendation of the panel that Harold Posner be disbarred must be accepted and his name shall be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*