## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AND MONTGOMERY COUNTY BAR ASSOCIATION, INC. *v.* PETER CHRISTIAN ANDRESEN

[Misc. Docket (Subtitle BV) No. 23, September Term, 1974.]

*Decided September 26, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Peter Christian Andresen*, in proper person, respondent.

*Courtland K. Townsend, Jr.*, with whom were *Jeb Howard* and *L. Hollingsworth Pittman, Bar Counsel*, on the answer to exceptions, for petitioners.

SMITH, J., delivered the opinion of the Court.

We again have before us the issue of whether Peter Christian Andresen (Andresen), a member of the Maryland Bar, should be disciplined. He was still incarcerated at the time of our decision in *Attorney Griev. Comm'n v. Andresen*, 279 Md. 250, 367 A. 2d 1251 (1977). His exceptions at that time to the recommendation of the three-judge panel included that absent his consent a hearing could not be held relative to disciplinary action until a reasonable time after the completion of his incarceration. We agreed and remanded the case to the panel. We specified that when he and Bar Counsel had adduced such additional evidence relative to the pending charges as they desired "the panel [was to] return the matter to us with its findings and recommendation."

Andresen stands convicted on one count of obtaining money under false pretenses and three counts of fraudulent misappropriation by a fiduciary. The details are set forth in *Andresen v. State*, 24 Md. App. 128, 331 A. 2d 78, *cert. denied*, 274 Md. 725 (1975), *aff'd* 427 U. S. 463, 96 S. Ct. 2737, 49 L.Ed.2d 627 (1976). For further background see *Andresen v. Bar Ass'n of Mont. Co.*, 269 Md. 313, 305 A. 2d 845, *cert. denied*, 414 U. S. 1065 (1973).

The opinion to which Andresen now takes exception states:

> "At the hearing [on the remand Andresen] represented to the panel that he had no further evidence to present, and when asked if he was ready to proceed, he further represented that he could not assure the panel he could present additional witnesses even if given more time. At no time did [he] request a continuance and accordingly the panel proceeded with the hearing."

The judges concluded that he was guilty of crimes involving moral turpitude. They recommended disbarment.

In an effort to avoid any disciplinary action, Andresen has filed eleven exceptions to the opinion and recommendation of the panel, the seven he filed after the earlier hearing and four additional ones. We shall discuss each exception seriatim.

1

Andresen contends that the panel improperly denied "his motion for continuance when it should have been granted under Maryland Rule BV16 c." The renewal of this contention after our earlier remand is frivolous.

2

"The admission into evidence of Exhibit No. 6 (Disbarment by the Supreme Court of the United States), when it was ordered without affording respondent due process and an opportunity to be heard." Even if we with propriety could be involved in a determination as to whether the Supreme Court of the United States denied an attorney "due process and an opportunity to be heard" before disbarring him, we have no need to consider this contention for the reason that the recommendation of the panel and our determination here is in no way based upon Andresen's disbarment by the Supreme Court. It is based upon his

conduct as established in a criminal trial in Maryland, his conviction having been ultimately affirmed by the Supreme Court of the United States. Accordingly, if the panel erred in admitting this evidence, the error was harmless.

### 3 and 8

"The denial of his motion to dismiss on the grounds of double jeopardy," citing *Spevack v. Klein*, 385 U. S. 511, 87 S. Ct. 625, 17 L.Ed.2d 574 (1967), and *Blondes v. State*, 273 Md. 435, 330 A. 2d 169 (1975). Neither case is apposite. In order for the double jeopardy provisions of the Fifth Amendment to the Constitution of the United States to be applicable it would be necessary for this to be a criminal proceeding. We said in *Maryland St. Bar Ass'n v. Sugarman*, 273 Md. 306, 329 A. 2d 1 (1974), *cert. denied*, 420 U. S. 974 (1975):

> "Based upon the holdings in the New York and Illinois cases, our repeated statements that disbarment proceedings are not criminal proceedings, *Kastigar* [*v. United States*, 406 U. S. 441, 92 S. Ct. 1653, 32 L.Ed.2d 212 (1972)], and the traditional view of Anglo-American jurisprudence that disbarment is intended not as punishment, but as protection to the public, we hold that this proceeding is not a 'criminal case' within the purview of ... the Fifth Amendment to the Constitution of the United States." *Id.* at 318.

The contention in *Sugarman* concerned the self-incrimination provision of the Fifth Amendment, but the holding there is no less applicable to the double jeopardy provision.

### 4

Andresen excepts to "[t]he denial of his motion to dismiss the Petition of the Montgomery County Bar Association because it was superseded by that of the Attorney Grievance Commission of Maryland under Rule BV16 and the second petition was erroneous in its denied allegations." He does not

spell out what he means in his reference to the second petition's having been "erroneous in its denied allegations." The petition of the Montgomery County Bar Association was filed under the transitory provisions of the BV rules, to which we made reference in the earlier opinion. We regard the exception as frivolous.

5

Andresen objects to "[t]he finding by the Panel that there were 'defalcations' involved in [his] case." What the panel said in its first opinion was, after referring to reliance on Rule BV10 e 1:

> "Respondent then presented evidence through his own testimony and that of several witnesses seeking to mitigate punishment. He freely acknowledged what he characterized as mistakes, but sought in part to excuse his *defalcations* by implying that unjustified pressures were brought to bear upon him by lenders in the real estate transactions he was handling and that no one suffered any pecuniary loss." (Emphasis added.)

Rule BV10 e 1 provides in pertinent part:

> "In a hearing of charges pursuant to this Rule, a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime."

Accordingly, we perceive no error in referring to crimes of the sort here involved as "defalcations."

6 and 7

These exceptions go not to the issue of whether Andresen is guilty of professional misconduct but to the propriety of the recommended sanction. They do not involve any exculpatory explanation. We shall discuss the sanction to be imposed at the conclusion of this opinion.

### 9

Andresen claims that the panel should have allowed him a "reasonable time following termination of incarceration" to prepare for the subsequent hearing. We have already quoted from the panel's statement on the subject. Even at the time of oral argument before us Andresen could not say that there were witnesses whom he could produce if he had more time. Accordingly, this contention is without merit.

### 10

Without citation of authority, Andresen objects to "[t]he finding of the panel that . . . [his] crimes . . . involved moral turpitude."

The term "moral turpitude" is defined in *Black's Law Dictionary* (4th ed. 1957) as:

> "An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man. . . .
>
> "Conduct contrary to justice, honesty, modesty, or good morals." (Citing cases.) *Id.* at 1160.

In *Dental Examiners v. Lazzell,* 172 Md. 314, 320, 191 A. 240 (1937), Judge Sloan asked the rhetorical question for the Court, "What is moral turpitude?" and then proceeded to say, "Lexicographers and courts agree on the definition, but the courts do not agree in its application in characterizing offenses as involving moral turpitude." Moreover, in *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 374 A. 2d 354 (1977), Judge Levine said for the Court:

> "When applied to the context in which we deal with it here, the term ['moral turpitude'] connotes a fraudulent, *Iowa State Bar Association v. Kraschel,* 260 Iowa 187, 148 N.W.2d 621, 627 (1967), or dishonest, *Committee of Legal Ethics v. Scherr,* 149 W. Va. 721, 143 S.E.2d 141, 147 (1965), intent. As

Justice Traynor said for the California Supreme Court in *In re Hallinan*, 43 Cal. 2d 243, 272 P. 2d 768, 771 (1954), *appeal after remand*, 48 Cal. 2d 52, 307 P. 2d 1 (1957):

> 'Although the problem of defining moral turpitude is not without difficulty (citations omitted), it is settled that whatever else it may mean, it includes *fraud* and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. (Citations omitted). It is also settled that the related group of offenses involving *intentional dishonesty* for purposes of personal gain are crimes involving moral turpitude....' (Citations omitted; emphasis added.)"

*Id.* at 459-60.

In this particular case, under a rule providing for suspension of an attorney convicted of a crime involving moral turpitude, Andresen stands suspended from the practice of law pending our determination of his disciplinary proceeding. Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 140, under which Andresen was convicted, makes it a crime for an individual "by any false pretense [to] obtain from any other person any chattel, money or valuable security, with intent to *defraud* any person of the same ...." (Emphasis added.) Code (1957) Art. 27, § 132, under which Andresen was also convicted, makes it a crime for a fiduciary to "*fraudulently* and wilfully appropriate to any use and purpose not in the due and lawful execution of his trust" assets in his hands. (Emphasis added.) Given the fact that Andresen's conviction necessarily meant establishment of a fraudulent intent, and the traditional view explicated in *Walman* that crimes involving fraud are ones involving moral turpitude, it is a bit surprising that he would here argue that his crimes did not involve moral turpitude.

11

Andresen excepts to "[t]he finding of the panel that [his] crimes . . . were perpetrated 'to enrich the offending attorney or to enhance his own well-being at the expense of his client, the state, or any other individual." The panel made no such finding. It quoted from *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 550, 318 A. 2d 811 (1974), where we said that "when an attorney is found guilty of a crime which is deemed to involve moral turpitude and the offense entails the employment of dishonesty, fraud, or deceit which is perpetrated to enrich the offending attorney or to enhance his own well-being at the expense of his client, the state, or any other individual," the attorney should be disbarred "[i]n the absence of a compelling exculpatory explanation . . . ."

### Disposition

Our disposition of this case need not depend upon the label to be applied to these crimes. The allegations against Andresen included that he had "engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation," in violation of "Disciplinary Rules 1-102 and 9-102 of the Code of Professional Responsibility." DR 1-102 (A) (4) specifies that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation," while DR 9-102 concerns itself with preserving the identity of funds and property of a client. Thus, there is the more fundamental problem of whether Andresen continues to be morally qualified to practice law. We have spoken of the duty which rests upon the courts and the profession as a whole to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practioner. *See Maryland St. Bar Ass'n v. Boone,* 255 Md. 420, 425, 258 A. 2d 438 (1969); *In the Matter of Lombard,* 242 Md. 202, 207, 218 A. 2d 208 (1966); and *Rheb v. Bar Ass'n of Baltimore,* 186 Md. 200, 205, 46 A. 2d 289 (1946). We have repeatedly referred to the Lord

Mansfield rule enunciated in *Ex Parte Brounsall*, 2 Cowp. 829 (1778):

> "[T]he question is, Whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion. . . . It is not by way of punishment; but the court on such cases, exercise their discretion, whether 'a man whom they have formerly admitted, is a proper person to be continued on the roll or not."

*See, e.g., Attorney Grievance Comm'n v. Green*, 278 Md. 412, 414, 365 A. 2d 39 (1976); *Bar Ass'n of Balto. City v. Posner*, 275 Md. 250, 255, 339 A. 2d 657, *cert. denied*, 423 U. S. 1016, 96 S. Ct. 451 (1975); *In re Barton*, 273 Md. 377, 381, 329 A. 2d 102 (1974); *Sugarman*, 273 Md. at 316, citing *In re Rouss*, 221 N. Y. 81, 84-85, 116 N. E. 782 (1917), an opinion by then Judge Cardozo; *Agnew*, 271 Md. at 550; *Balliet v. Balto. Co. Bar Ass'n*, 259 Md. 474, 478, 270 A. 2d 465 (1970); and *In re Meyerson*, 190 Md. 671, 675-76, 59 A. 2d 489 (1948).

In this particular case no exculpatory explanation of any kind has been given. Andresen would have us believe that in the final analysis his clients did not lose financially. Whether this is or is not true we do not know, but it certainly is true that his clients were injured. In *Bar Ass'n v. Marshall*, 269 Md. 510, 519, 307 A. 2d 677 (1973), citing a number of Maryland cases, we observed, "The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct." *See also Bar Ass'n of Balto. City v. Carruth*, 271 Md. 720, 727, 319 A. 2d 532 (1974). In *Marshall* Judge Digges went on to say for the Court:

> "The very administration of justice under our adversary system is dependent upon the ability of members of the public as well as the courts to rely on the integrity of counsel who handle the business affairs of their clients both in and out of the court."
> *Id.* at 519.

In *Green, Posner,* and *Sugarman* we quoted from *In re Stump,* 272 Ky. 593, 114 S.W.2d 1094 (1938). Although that case dealt with the reinstatement of a disbarred attorney, what the Court of Appeals of Kentucky there said is nonetheless apposite here:

> "The ultimate and decisive question is always whether the applicant is now of good moral character and is a fit and proper person to be reintrusted with the confidences and privileges of an attorney at law. This question has a broader significance than its purely personal aspect. From time immemorial lawyers have in a peculiar sense been regarded as officers of the court. It is a lawyer's obligation to participate in upholding the integrity, dignity, and purity of the courts. He owes a definite responsibility to the public in the proper administration of justice. It is of utmost importance that the honor and integrity of the legal profession should be preserved and that the lives of its members be without reproach. The malpractice of one reflects dishonor not only upon his brethren, but upon the courts themselves, and creates among the people a distrust of the courts and the bar." *Id.* at 598.

It thus follows that the recommendation of the panel that Andresen be disbarred be accepted. His name shall be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*