## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* CHARLES P. HOWARD, JR.

[Misc. Docket (Subtitle BV) No. 8, September Term, 1977.]

*Decided May 10, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*L. Hollingsworth Pittman, Bar Counsel,* for petitioner.

*Charles P. Howard, Jr.,* respondent.

PER CURIAM:

The three-judge panel assigned to hear this attorney disciplinary matter pursuant to Maryland Rule BV9 recommended, for reasons stated in its "Findings of Fact . . . Conclusions and Recommendations," that Charles P. Howard, Jr., be reprimanded for his professional misconduct. After careful review of the record, we adopt the views of the panel and hereto append its opinion. Accordingly, we reject the exceptions filed by the Attorney Grievance Commission.

Charles P. Howard, Jr., is, therefore, pursuant to Maryland Rule BV11 reprimanded. In addition, he is directed to pay to the Attorney Grievance Commission the amount of $93.00 representing the Commission's transcription costs in connection with this matter.

IT IS SO ORDERED.

## FINDING OF FACTS

The Attorney Grievance Commission of Maryland through Bar Counsel filed a petition for disciplinary action on August 16, 1977 against Charles P. Howard, Jr. Pursuant to an order dated August 30, 1977 a three-judge panel consisting of Judges Albert P. Close (presiding), Edward D. Higinbothom, and Brodnax Cameron, Jr. was convened.

The petition charges Mr. Howard with violations of Disciplinary Rule 1-102 (misconduct), Disciplinary Rule 6-101 (failing to act competently), Disciplinary Rule 7-101 (failing to represent a client zealously), and Disciplinary Rule 7-106 (trial misconduct) of the Code of Professional Responsibility, Rule 1230, Appendix F, Maryland Rules of Procedure.

Four violations were alleged:

I. *Matter of Bernice Adams.* A trip-and-fall case arising out of an incident on March 23, 1962. Mr. Howard represented the plaintiff, Bernice Adams. The case was called for trial March 2, 1966, Mr. Howard did not appear, and ultimately on January 9, 1974, the proceedings were dismissed under Rule 530.

II. *Matter of Eric T. Campbell.* This involved prosecution of an appeal of Campbell's armed robbery conviction. The appeal was dismissed on July 29, 1971 because of failure to file appellant's brief on or before the June 24, 1971 deadline.

III. *Matter of contempts of Court.* Mr. Howard was adjudged guilty of contempt on the following occasions:

    a) before Judge David Ross, October 21, 1971;

    b) before Judge George B. Rasin, Jr., December 1, 1972; and

    c) before Judge Shirley B. Jones, November 6, 1972.

IV. *Matter of Edward B. Pauls.* This particular charge, involving alleged negligence in the handling of a motor tort claim, was dismissed by the Attorney Grievance Commission in open court.

Mr. Howard responded to the petition by filing, first, a "preliminary objection" and, later, an answer. The "preliminary objection" questioned the jurisdiction of the court to hear the pending matter on the grounds that Rule BV9, enacted in 1975, should not apply retroactively so as to give the court power to re-hear matters that were duly heard to a conclusion by those handling such things under the former rules. He said that all of these things had been before the Bar Association of Baltimore City in the past and that, anyway, under the present Rules he would have been entitled to a hearing before an inquiry panel before the review board could refer the case to Bar Counsel. In addition, he argued that if the protection of the public is the purpose behind disciplinary proceedings, this purpose has not been served in this case because the complaints are so stale (ten years since the filing of the first one; four years since hearings before the Grievance Committee of the Baltimore City Bar Association). Therefore, he said, he has been prejudicially singled out for discipline at a time when a valid reason no longer exists.

To this, the Attorney Grievance Commission responded that no inquiry panel had ever heard the case, that previously it had only been before the Bar Association of Baltimore City, that the Bar Association had not concluded the matter at the time the Attorney Grievance Commission came into existence,

and, that by treating the Bar Association proceedings as that of an inquiry panel which reported to the review board, the procedure was proper under the transitional provisions of the order of the Court of Appeals of February 10, 1975 and in keeping with established law. The Grievance Commission also denied that it had singled out Mr. Howard for discriminatory treatment and that the past actions of the Bar Association amounted to a decision in the matter.

The case came on for hearing on November 22, 1977 at which time the motion raising preliminary objection filed by Mr. Howard was denied for the reasons given in the answer of the Attorney Grievance Commission. Mr. Howard represented himself. Testimony was taken and numerous exhibits were received into evidence. The findings of fact which follow are grouped according to the respective matters alleged in the petition.

I. *Matter of Bernice Adams.* The allegations of the petition with respect to this matter, which are incorporated by reference herein, were proven. Mrs. Adams tripped and fell on March 23, 1962, on June 4, 1963 suit was filed, on March 2, 1966 the case was called for trial in open court but Mr. Howard failed to appear, and a judgment of non pros was entered in favor of the defendants.

On March 5, 1966 Mr. Howard filed a motion to set aside the judgment of non pros, the motion was denied on June 20, 1966, it was subsequently renewed on November 22, 1966 and again denied on October 18, 1967. It was finally dismissed under Rule 530 on January 9, 1974.

The client, Mrs. Bernice Adams, testified in substance in accordance with her statement of February 11, 1971 to Mr. Francis J. Walsh, Director of Investigative Services (Petitioner's Exhibit No. 1), that is, that she had received a settlement offer of $900.00, that Mr. Howard said it was too little, that suit was filed, that she heard little or nothing from Mr. Howard and that finally the case was dismissed.

Mr. Howard, in mitigation, put into evidence a rather extensive file and log showing considerable activity by him in the matter, including many letters and notes to Mrs. Adams

imploring her to get in touch with him. As to his failure to appear in court on March 2, 1966, he could only say that he never got the postcard notice, that he had checked with the assignment bureau the day before, and that he could have been reached at home where he was languishing with a bad cold on the appointed day for trial. He promptly moved on March 5th for the non pros (referred to by him as "dismissal") be set aside but his motion was denied on June 20, 1966 by Judge Cullen. He tried again on November 22, 1966 but Judge Sklar denied the motion almost a year later and the case ultimately was disposed of on January 9, 1974 under Rule 530.

The docket entries reflect considerable activity on the case and tend, in this respect, to corroborate Mr. Howard's log.

It is not, therefore, a case of blatant lethargy on Mr. Howard's part. His greatest dereliction was his failure to show up for the March 2, 1966 trial. He explains this by saying that he never received a notice and that he had discharged his duty to keep abreast of the assignment docket by making inquiries the previous day. It is not clear whether he specifically inquired about the *Adams* case, or whether he could reasonably expect to be informed of the *Adams* trial date in connection with other inquiries. Whatever the case, he promptly sought to remedy the situation by filing his motion on March 5 to set aside the order of dismissal. Because Judge Cullen, and later Judge Sklar, refused to grant his motion, we must conclude that Mr. Howard's explanation and excuses were not valid, at least for the purposes of ruling on the case then before the Court. *Whitcomb v. Horman,* 244 Md. 431, 443 (1966).

II. *Matter of Eric T. Campbell.* Again, the allegations of the petition, incorporated by reference herein, were proven both by documentary evidence and by the testimony of Mr. Campbell. Mr. Campbell had been convicted of armed robbery. He was sentenced on June 22, 1970 to serve twenty years. Mr. Howard was engaged to prosecute his appeal but failed to file his brief on time, resulting in the appeal's being dismissed on July 29, 1971.

Mr. Howard's version is that he did not represent Mr. Campbell at trial but was prevailed upon by Mr. Campbell's

mother (who testified to this effect) to prosecute the appeal. He received payments from Mr. Campbell's mother totaling $924.00 of which approximately three-fourths went to the costs of transcript and printing. The matter of the transcript presented difficulties. The court reporter for one of the three trial days had resigned from service before the Supreme Bench and refused to type the transcript. He was even brought before the Court in contempt proceedings for his refusal to do so and another reporter eventually had to type the testimony. Numerous extensions for the filing of the transcript were granted throughout late 1970 and 1971. The record, including the transcript, was finally received by the Court of Special Appeals on April 30, 1971. On July 29, 1971 the Court of Special Appeals on its own motion dismissed the appeal pursuant to Rule 1035 a 2. On August 18, Mr. Howard filed a motion to rescind the order dismissing appeal, conceding that the brief was due June 24, 1971 but saying that he felt there was no hurry because a letter from the Clerk of the Court of Special Appeals told him that the appeal would be heard in September. The motion to rescind went on to state "that the brief is now prepared and can be filed within ten days from the date of the filing of this motion". The motion was denied on August 26, 1971 on which date the mandate was issued dismissing the appeal.

There is some discrepancy at this point between the dates indicated by the record and the statements made by Mr. Howard at the hearing. Mr. Howard indicated to the Court that he filed a request on or about June 20, 1971 for an extension to a period in late July, "I think it is July the 20th actually; that the arrangements were made, the brief was prepared, of course, the brief and transcript were actually prepared and the cost of the brief itself was $36.00 so far as my file will reflect but I've not been able to find a bill so I couldn't even offer that... I left my office approximately July 20th to travel to Miami, Florida for the purpose of preparing for the National Bar Association's national convention which began, I believe in that year on the 28th of July and lasted for the seven days as it usually does. I was the general chairman of that convention and as a result I have

some extreme duties. I had made arrangements for the brief to be filed and it just was not filed by my office." (Vol. Two, pp. 12-13).

It is not at all clear when Mr. Campbell first learned that his appeal had been dismissed. He says he first learned of it on January 4, 1973 in a letter received from the Chief Deputy Clerk of the Court of Special Appeals. He also says that he had tried in vain, as had his mother, to reach Mr. Howard to find out the status of his appeal.

In the interim between the dismissal of the appeal and what Mr. Campbell says was his first official notice of the dismissal, it appears that Mr. Howard visited Mr. Campbell and one Samuel Ledbetter, a confederate in the robbery, to persuade them that their efforts would better be spent to obtain an early parole. Mr. Howard said that he explained to Mr. Campbell's mother that the fee for the appeal could be applied to his efforts to help Mr. Campbell obtain an early release. The file itself bears out the contention that the emphasis shifted to the parole effort, for Mr. Howard interceded with the parole board and with the sentencing judge and Mr. Campbell himself wrote numerous letters, sending copies to Mr. Howard.

After Mr. Campbell became aware of the dismissal of his appeal, Mr. Campbell and Mr. Howard continued to correspond and, from the tone of Mr. Campbell's letters, he seemed quite willing to let Mr. Howard continue working on his behalf. He had, however, at some point previously, sought the intercession of the Maryland State Bar Association with the parole authorities and, in addition, lodged a complaint about Mr. Howard's conduct. On November 6, 1973 Mr. Campbell signed a letter to the Bar Association of Baltimore City and asked that the complaint against Mr. Howard be dropped. The letter, according to Mr. Campbell, was concocted in Mr. Howard's office and given to Mr. Campbell at the penitentiary to be signed and forwarded. Mr. Howard had previously (March 18, 1973) warned Mr. Campbell that "if you want me to pursue this further, it may be necessary for you to begin talking to your mother again, but especially necessary for you to discontinuing [sic] your complaints to the

Bar Association against me. If you continue to do so, it will be necessary for me to withdraw from your case and not to participate except to defend myself". (Respondent's Exhibit No. 3Q).

Mr. Campbell was ultimately released on June 5, 1975. According to Mr. Howard, some of Mr. Campbell's difficulties were of his own making as a result of infractions of the rules when he was in the correctional system. (Vol. Two, p. 14).

III. *Matter of contempts of court*

a) *Judge Ross.* Mr. Howard represented one Tyrone Horton and he entered an insanity plea on his behalf. According to Mr. Howard, the State's Attorney's office would not negotiate a plea bargain unless Horton submitted to a psychiatric examination. The accused then wrote Judge Ross to the effect that he did not wish to enter the insanity plea and Judge Ross ordered a re-arraignment for October 27, 1971. Mr. Howard did not appear at the scheduled time and had to be located and sent for, finally arriving almost an hour and a half late. Judge Ross found him in contempt and fined him $100.00. Mr. Howard says that his trial schedule was extremely heavy at the time and that he had mistakenly thought the arraignment was set for October 28, 1971.

b) *Judge Rasin.* The facts as set forth in the petition are not disputed. A hearing was scheduled before Judge Rasin, Mr. Howard failed to appear, he was cited for contempt, he failed to answer the show cause order, and was ultimately fined $250.00 by Judge Rasin. His explanation is that he did not realize he was in contempt because the case involved what he thought would be testimony before a Master. He did not realize that in Kent County there is no Master and such testimony is before the Court. He was in another court on another matter.

c) *Judge Jones.* Again, there is no real dispute as to the circumstances of this contempt. Mr. Howard failed to show up on the appointed trial date and could not be reached when the Court tried to track him down. His excuse before Judge Jones was that he did not believe he represented the particular defendant and that he was trying a case in Washington at the time. Judge Jones found, after hearing Mr.

Howard's explanation, that "you have been completely candid with me and yet that doesn't erase the inconvenience and not only inconvenience, but really the hindering of the administration of justice because these people did come here to testify" (Petitioner's Exhibit No. 20, page 12), and she fined him $50.00.

## CONCLUSIONS AND RECOMMENDATIONS

We find that the Respondent, Charles P. Howard, Jr., violated Disciplinary Rule 6-101(A)(3) by neglecting legal matters entrusted to him in the matter of Bernice Adams and the matter of Eric T. Campbell. Except to the extent that neglect indicates lack of preparation adequate in the circumstances, there is no evidence of a violation of Disciplinary Rule 6-101(A)(2). We do not find that Mr. Howard violated Disciplinary Rule 7-101 because he did not intentionally fail to carry out his contract of employment with Adams and Campbell.

Mr. Howard also violated Disciplinary Rule 7-106(C)(6) in the matter of the three contempts and in his failure to be present for the trial when the Bernice Adams case was called. This lack of punctilio in dealing with court schedules was not only detrimental to the administration of justice but also constituted discourteous conduct degrading to the tribunal.

Had these proceedings been instituted more closely on the heels of the events giving rise to them, we might well have recommended a suspension. A suspension would have served a dual purpose: it would have protected the public during the period of suspension and it would also have had the salutory effect of forcing Mr. Howard to reduce his practice to more manageable proportions.

But much water has gone over the dam since then. His lapse in the Bernice Adams matter occurred in March 1966. His failure to file the Campbell brief took place in July 1971, and the three contempts took place between October 21, 1971 and December 1, 1972. To disbar or suspend at this late date would be a case of locking the barn door after the horse is stolen and would not serve the underlying purpose of

disciplinary proceedings, which is not to punish the offending attorney but " 'is to protect the public from one who has demonstrated his unworthiness to continue the practice of law'." *Attorney Grievance Commission of Maryland v. Pollack,* 279 Md. 225, 237 (1977), *Maryland State Bar Association v. Agnew,* 271 Md. 543 (1974), *Maryland State Bar Association v. Phoebus,* 276 Md. 353 (1975). Mr. Howard explains his past derelictions by saying that he simply took on too much business when the events complained of took place. He says he has learned his lesson and has reordered his affairs so that these problems should no longer arise. We are aware of no incidents occurring after December 1, 1972 (the contempt punished by Judge Jones).

Mr. Howard's conduct stems from poor judgment in taking on too much work rather than from dishonesty or greed. Where his lapses were detrimental to his clients, as in the Adams and Campbell matters, he attempted to set things right by continuing his efforts. There was no gross and persistent neglect. *Maryland State Bar Association v. Phoebus,* 276 Md. 353, 365-366 (1975). His discourtesy to the courts in the contempt matters has already been punished.

We recommend, therefore, that Mr. Howard be given a stern public reprimand. There is no evidence to contradict Mr. Howard's contentions that his conduct in the past five years (he has been in practice twenty-two years) has been free of taint and that he now has better control of his practice. We are also mindful that the present improved machinery for administering attorney discipline is likely to provide a more timely response to any future misconduct on Mr. Howard's part than was true in this case. Should there be further misconduct on Mr. Howard's part, the instant proceedings can form a basis for more severe sanctions in the future. *Maryland State Bar Association v. Phoebus,* 276 Md. 353, 365 (1975).