ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND *v.* JOHN J. McBURNEY

[Misc. Docket (Subtitle BV) No. 6, September Term, 1977.]

*Decided October 20, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*John Addison Howard, Deputy Bar Counsel,* for petitioner.

*James E. Kenkel* for respondent.

SMITH, J., delivered the opinion of the Court.

We shall here impose the sanction of disbarment upon John J. McBurney (McBurney).

McBurney was admitted to the bar of this Court on June 27, 1961. Earlier he had been admitted to practice in the District of Columbia. Bar Counsel, acting on behalf of the Attorney Grievance Commission, filed a petition with us alleging that McBurney had violated various Disciplinary Rules, including DR 1-102 (A) (4) forbidding a lawyer from "[e]ngag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"; DR 5-104 (A) specifying that a "lawyer shall not enter into a business transaction with a client if they

have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure"; DR 9-102 (A) requiring that "[a]ll funds of clients paid to a lawyer . . . , other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except [certain funds not here involved]"; and DR 9-102 (B) (4) requiring that an attorney "[p]romptly pay or deliver to the client as requested by a client the funds . . . in the possession of the lawyer which the client is entitled to receive."

The matter came on for hearing before a three-judge panel. By reason of certain technical objections the panel did not consider whether McBurney's conduct violated certain of the Disciplinary Rules. In *Attorney Griev. Comm'n v. McBurney*, 282 Md. 116, 383 A. 2d 58 (1978), we remanded the case to the panel to determine whether McBurney did violate the rules noted above. The panel has now filed an opinion finding that he did violate each of those Disciplinary Rules. It has recommended disbarment.

The complaint here grows out of representation by McBurney of Raymond G. Queen (Queen), as the result of a motor vehicle accident. The matter was settled for $6,000 on March 12, 1975, the day set for trial. Queen was anxious to return to his home in another state. Therefore, at the suggestion of McBurney, he executed a power of attorney to McBurney authorizing him to negotiate the drafts from the two insurance companies involved upon their receipt. It was said that this would expedite ultimate disbursement to Queen. The drafts or checks in settlement were received and deposited by McBurney on March 18 and April 1. Queen testified that he had assumed it might "be two or three maybe six weeks" before the money was received from the insurance companies. He stated he first contacted McBurney concerning his money about six weeks after March 12. He did not recall whether he talked directly to McBurney or to his secretary but he did recall that he was told that the money

had not been received from either insurance company. The next time he called he was told funds had been received from one company, but not the other. He called a number of times. Finally, he called one insurance company directly. He said he was there advised that the sum in question had been paid quite some time previously. It was suggested to him that he get in touch with the Prince George's County Bar Association, which he did on June 5, 1975.[1] About a week or two later Queen again called McBurney. Queen was then told that a check to him had been put in the mail that day.

Although McBurney said he maintained an escrow account, the funds from the insurance companies were deposited in his office account, not his escrow account. The first check drawn to Queen was dated June 27, 1975. It had the word "trustee" typed alongside McBurney's name at the top of the check. His secretary testified that she did this at McBurney's direction. He said that notwithstanding the fact that he believed that he had Queen's permission to deposit the funds in his business account he felt that he should have this typed on the check "because [he] had been holding Mr. Queen's money, and it was not [his] escrow account, [it] was [his] business account." The check was not honored upon presentation for payment to the bank upon which it was drawn because there were insufficient funds on deposit. McBurney claimed that when he wrote this check he had sufficient funds in the bank to make the check good. He also contended that he was not notified by the bank that the check had not cleared. A second check dated August 8 was drawn to Queen on the same account. It likewise was not paid because of a lack of sufficient funds. McBurney admitted that he was notified by his bank of its failure to pay in that instance. He finally paid Queen in full in October 1975 after he was advised by Bar Counsel of his interest in the matter.

There is clear and convincing evidence to support the conclusion of the three-judge panel that McBurney violated

---

[1]. It will be noted that this was prior to July 1, 1975, when the revised BV Rules became effective. Under those rules the Attorney Grievance Commission was created and provision was made for Bar Counsel. Grievance matters are no longer handled by bar associations.

each of the Disciplinary Rules which the panel found he violated.

Citing a number of Maryland cases, we observed in *Bar Ass'n v. Marshall,* 269 Md. 510, 519, 307 A. 2d 677 (1973), "The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct." *See also Atty. Griev. Comm'n v. Andresen,* 281 Md. 152, 160, 379 A. 2d 159 (1977), and *Bar Ass'n of Balto. City v. Carruth,* 271 Md. 720, 727, 319 A. 2d 532 (1974). In *Marshall* Judge Digges went on to say for the Court:

> "The very administration of justice under our adversary system is dependent upon the ability of members of the public as well as the courts to rely on the integrity of counsel who handle the business affairs of their clients both in and out of the court. To this, we add that of no small concern to the general membership of the bar should be the fact that the standing in the community of the legal profession is frequently measured by the deviations of the dishonest few rather than by the standard of great devotion and honor which is set by the vast majority of members of the fraternity. It must be borne in mind that the purpose of disciplinary actions such as this is not to punish the offending attorney, as that function is performed in other types of legal proceedings, but it is to protect the public from one who has demonstrated his unworthiness to continue the practice of law. When this unworthiness is shown to be present, as we conclude it is here, it becomes our sad duty, but nonetheless our obligation, to withdraw the privilege to practice law earlier granted by this Court. To fail to do so will impliedly represent to the public that the attorney continues to possess the basic qualities of honor traditionally associated with members of the bar of this State." *Id.* at 519-20.

It thus follows that we accept the recommendation of the panel that McBurney be disbarred. His name shall be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*