## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* MARSHALL I. STEWART

[Misc. Docket (Subtitle BV) No. 9, September Term, 1978.]

*Decided May 31, 1979.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Mary Ellen Brooke* for respondent.

*Theodore R. McKeldin, Jr., Special Assistant Bar Counsel,* for petitioner.

DAVIDSON, J., delivered the opinion of the Court.

The Attorney Grievance Commission through Bar Counsel filed a petition for disciplinary action against Marshall I. Stewart (Stewart) alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. Pursuant to Maryland Rule BV9, we referred the matter to the Supreme Bench of Baltimore City to be heard by a three-judge panel. The panel, after giving notice and conducting an evidentiary hearing, made findings of fact from which it concluded that Stewart had violated certain disciplinary rules as charged. It recommended that he be disbarred. In a memorandum opinion, the panel set forth its findings of fact and its recommendation as follows:

> "*FINDINGS OF FACT*
> "A. *Matter of Bryant Millberry (on complaint of Iris O. Ambush).*
> The allegations regarding this complaint were proven by clear and convincing evidence. In June, 1975, the Respondent undertook to represent Mr. Millberry on his appeal to the Court of Special Appeals of Maryland from his conviction in the Criminal Court of Baltimore City. The Respondent filed the appeal on June 19, 1975, which was

dismissed on September 18, 1975 because the record had not been transmitted. The Respondent had notified the court reporter who was present at the disposition only but did not at any time contact the court reporter who was at trial, even though he was advised of this by the court reporter at disposition. (Pet.Ex.A.1.d. (1).) The Respondent made no motion to extend the time for transmitting the record, nor did he undertake to prepare an appeal brief. As a result of the dismissal of the appeal, the client's appeal bond was revoked and he was incarcerated. Subsequently, the Respondent did obtain a belated appeal through post conviction proceedings, but the appeal thereafter was handled by another attorney. The Respondent received $945 of his $1000 fee, but refused to return any part of it even though requested to do so. (Pet.Ex.A.1.d. (2).)

"B. *Settlement of 425 Alabama Road property. (on complaint of David Downes).* The allegations regarding this complaint were proven by clear and convincing evidence. The Respondent represented the purchaser of this property. At the settlement on May 19, 1975, the Respondent retained from the $45,000 purchase price the sum of $20,993.72 in order to pay off the existing mortgage on the property. The Respondent recorded the deed on June 3, 1975. The Respondent first attempted to pay the mortgagee around July 14, 1975 by sending a check for the mortgage balance that was due on May 19, 1975. The check was returned to the Respondent by the mortgagee's attorney with a letter advising of the interest which had accrued since May 19, 1975 and also advising that foreclosure proceedings would be instituted if full payment were not made by July 18, 1975. The Respondent finally paid the mortgage balance in full on September 12, 1975, four days before the property was to be sold at public auction under the foreclosure proceedings which had since been instituted.

"At all times, the $20,993.72 retained by the Respondent at settlement was on deposit in the Respondent's attorney escrow account. The Respondent did not send the notice required of Section 7-106 (b) of the Real Property Article to the seller and purchaser advising of the non-payment of the mortgage.

"After settlement, the seller of the property was denied a subsequent mortgage on another property because of the default in the mortgage on the subject property occasioned by the Respondent's inaction.

"C. *Settlement of Laurens Street properties (on complaint of Bernard Dackman).* The allegations regarding this complaint were proven by clear and convincing evidence. The Respondent represented the purchaser of these 3 properties. At settlement on October 17, 1975, the Respondent retained the executed deed and sufficient funds to record the deed and the purchase money mortgage executed by the purchaser to the seller. The purchase price was $2500; the mortgage, $1750. The Respondent did not record the deed or mortgage, and on April 6, 1976, the seller's attorney prepared and recorded a new deed and paid for same. The Respondent still has the deed executed at settlement in his file. The Respondent received $700, partly by monies from the purchaser and partly by monies retained at settlement. These sums were to include the Respondent's fee and disbursements he was to make. The Respondent has not refunded or disbursed any of the $700.

"D. *Divorce of Dolottie Jones (on complaint of Mary Carter).* The Respondent filed a Bill of Complaint for Divorce A Mensa et Thoro and also appeared with his client's mother at a criminal proceeding. He received $120, out of which he paid $35 advanced court costs. He did not pursue the divorce case because he was not paid the balance of his $275 fee.

"E. *Divorce of Boyd T. Muir.* The allegations regarding this complaint were proven by clear and convincing evidence. The Respondent received $300 of his $350 fee and in November, 1974 he filed a Bill of Complaint for an absolute divorce on behalf of his client. Service against the Defendant wife was returned twice 'non est' by December, 1974. Although the Respondent advised his client he would obtain service by posting notice on the courthouse door, as permitted by the Rules, he failed to do so until after his client had testified before an inquiry panel of the Commission on September 29, 1976. The Respondent had testified before this Court that he had posted such notice in January, 1976, before his client had complained to the Commission, but retracted this testimony when confronted by the court file in that case (Resp.Ex.2). The Respondent ultimately concluded the uncontested divorce for his client in January, 1977.

"F. *Matter of John Clauss, Jr. (on complaint of Winifred Heill).* An employee of the Respondent, John Clauss, Jr., who is not an attorney, was listed in the telephone directory as an attorney with the Respondent's office address and telephone number. A letter purportedly bearing the Respondent's signature and directed to a local bank states that Mr. Clauss was an 'attorney at law' employed by the Respondent. The Respondent denied any knowledge of the telephone directory listings or the letter to the bank and denies that the signature on the letter is his. The signature on the letter is substantially dissimilar to the Respondent's signature. This panel feels there is insufficient proof to support the Commission's allegations that the Respondent had knowledge of Mr. Clauss' holding himself out as a licensed attorney.

"*General comments.* The Respondent presented no meaningful explanations for his inaction in these various matters, except for Complaint D. He

attempted to excuse many items because of a so-called 'seizure' he had sometime in June, 1975. He testified that he has been under medical treatment from 1974 continuously to date. However, the nature of his maladies were imprecise (overweight, heart, etc.) and he presented no hospital records, doctors' reports or other supporting data.

"*Prior history.* The Respondent is 63 years old and although he passed the Maryland Bar in 1940, he did not practice in Maryland until 1971. In 1965, while practicing in the District of Columbia, he pleaded guilty to a violation of Section 77e (a) (1) of Title 15 of the U.S. Code, the essence of which is that he made certain representations regarding the sale of stock which had not been registered with the Securities and Exchange Commission. He received a one to three year suspended sentence, was placed on probation for three years and was fined $5000. The U.S. District Court for the District of Columbia determined that this crime was an offense involving moral turpitude and suspended him from the practice of law for three months (Com.Ex.G.1.a. and G.1.b.). As a result of that episode, the Respondent came to Baltimore and taught English at the University of Baltimore until 1971, when he commenced the practice of law here.

## "*CONCLUSIONS OF LAW*

"From these findings of fact, we conclude, as to Complaints A, B, C and E, that the Respondent violated the following Disciplinary Rules of the Code of Professional Responsibility:

"1. DR6-101 (A) (3), neglecting legal matters entrusted to him;

"2. DR7-101 (A) (2), failure to carry out contracts of employment entered into with clients for professional services; and

"3. DR1-102, engaging in conduct that is prejudicial to the administration of justice.

"While Complaint D may technically amount to neglect, the matter involved was only a partial divorce, which was merely a holding action until the time had ripened into grounds for an absolute divorce. Therefore, no significant prejudice has been demonstrated to the panel.

"Complaint F fails for lack of proof.

## "RECOMMENDATION

"In *Bar Ass'n of Balto. City v. Dearing,* 274 Md. 66 (1975), the attorney was suspended for two years for neglect of certain legal matters. In *Bar Ass'n v. Phoebus,* 276 Md. 353 (1975), the attorney was disbarred because he had neglected five legal matters and had been suspended on two previous occasions, once in 1966 for willful failure to file income tax returns, and again in 1971 for having made false statements to a client, an attorney and an Orphans' Court Judge. The matter before us would be akin to the *Dearing* case but for the Respondent's prior suspension in 1965. In that respect, the matter approaches *Phoebus.* The Respondent's course of conduct in the four complaints now before us demonstrates an habitual disregard for the rights of his clients and others and further demonstrates a total lack of awareness by the Respondent of his professional responsibilities. Even though his present conduct does not involve willful fraud or dishonesty, the result of his inactions caused substantial deprivation, financial and otherwise, to those affected. This conduct, coupled with a prior conviction for a crime involving moral turpitude, demonstrates that the Respondent 'lacks the required capacity to continue to practice law and establishes his unworthiness to hold himself out to the public as a practitioner in the profession.'

*Maryland St. Bar Ass'n v. Phoebus, supra,* 276 Md. at 366.

"This panel is aware of the recent decision in *Attorney Griev. Com'n v. Howard,* 282 Md. 515 (1978), which involved two cases of neglect and three contempts of court. The light sanction imposed there (a reprimand) was due to the age of the complaints (12 years and 7 years), the large amount of work the attorney had in fact put into those cases, and his diligence in rectifying his errors. None of those factors is present here. Indeed, unlike the instant case, the *Howard* court found no evidence of 'gross' and persistent neglect.' 282 Md. at 524. Finally, no prior disciplinary sanctions had been imposed on the attorney in the *Howard* case. That case is readily distinguishable.

"For the foregoing reasons, we have no alternative but to recommend disbarment, this 2nd day of January, 1979."

Stewart filed a motion to remand to the Supreme Bench of Baltimore City, exceptions to the panel's findings and recommended sanction, and, after oral argument in this Court, a motion for rehearing. In each of these documents, and at oral argument, he presented a variety of reasons why he should not be disbarred. Many of his contentions are inapposite. Others are unsupported by the evidence in the record. All of them are without merit.

Stewart's primary contention is that he was denied due process of law by the Inquiry Panel, the Review Board, and the three-judge panel. We do not agree.

Disciplinary proceedings for professional misconduct are not criminal proceedings. Their purpose is to protect the public by determining a lawyer's fitness to practice law. Accordingly, a lawyer charged with misconduct is not entitled, at any stage of disciplinary proceedings, to all of the constitutional safeguards accorded an accused in a criminal proceeding. *Attorney Grievance Comm'n v. Andresen,* 281 Md. 152, 155, 379 A. 2d 159, 161 (1977); *Maryland State Bar*

*Ass'n v. Sugarman,* 273 Md. 306, 309-19, 329 A. 2d 1, 3-7 (1974), *cert. denied,* 420 U. S. 974, 95 S. Ct. 1397 (1975); *Braverman v. Bar Ass'n of Baltimore,* 209 Md. 328, 348, 121 A. 2d 473, 483, *cert. denied,* 352 U. S. 830, 77 S. Ct. 44 (1956). Such a lawyer is entitled to the basic elements of due process — notice and the opportunity to defend in a full and fair hearing. *Bar Ass'n of Baltimore v. Posner,* 275 Md. 250, 255, 339 A. 2d 657, 659-60, *cert. denied,* 423 U. S. 1016, 96 S. Ct. 451 (1975); *Maryland State Bar Ass'n v. Frank,* 272 Md. 528, 538, 325 A. 2d 718, 723-24 (1974).

Additionally, the proceedings conducted by the Inquiry Panel and the Review Board under Rules BV6 and BV7 are similar to the proceedings conducted by a grand jury in criminal cases. Their purpose is to aid in determining whether to institute disciplinary action. They are investigatory in nature and informal to the extent that the rules of evidence need not apply. *Attorney Grievance Comm'n v. McBurney,* 282 Md. 116, 121-23, 383 A. 2d 58, 61-62 (1978); *Maryland State Bar Ass'n v. Frank,* 272 Md. at 538, 325 A. 2d at 723-24; Md. Rule BV6 d 1. At these stages of the proceedings, many of the constitutional safeguards accorded an accused in criminal cases are not available. More important, if a lawyer is given notice and the opportunity to defend in a full and fair hearing before a three-judge panel, the question whether he was accorded due process of law by the Inquiry Panel and the Review Board is ordinarily immaterial. *Bar Ass'n of Baltimore v. Posner,* 275 Md. at 255, 339 A. 2d at 659-60; *Maryland State Bar Ass'n v. Frank,* 272 Md. at 538, 325 A. 2d at 723-24. *See* Md. Rule BV10 b.

Here we find that Stewart was afforded notice and an opportunity to defend in a full and fair hearing following the institution of disciplinary proceedings in this Court. Accordingly, Stewart's contention that he was denied due process by the Inquiry Panel and the Review Board is without merit.

Stewart does not cite any authority to support his contention that he was denied due process by the three-judge panel because it, in a single proceeding, considered and determined multiple charges brought against him, and

because it had been informed that he had been suspended from the practice of law in the District of Columbia in 1965 before it determined whether he was guilty of misconduct. While it is arguable that such factors might have prejudiced Stewart if the proceeding had been before a jury comprised of laymen, there is nothing to indicate that any prejudice resulted here because the proceeding was conducted by a three-judge panel possessing "the professional expertise, experience, and judicial temperament with which our legal system has inherently invested a trial judge." *State v. Hutchinson,* 260 Md. 227, 233, 271 A. 2d 641, 644 (1970).

The short answer to Stewart's contention that the three-judge panel deprived him of due process of law is that he conceded, at oral argument, that in 1974 he filed a divorce proceeding but failed to obtain service upon the opposing party until after his client had complained to the Attorney Grievance Commission in 1976; that in 1975, by his inaction, he caused a default on a client's mortgage; and that in 1976, he failed to record a deed and a mortgage. The panel, after a hearing, determined that between 1975 and 1976 Stewart was guilty, not only on these three occasions, but also on one other, of violating Disciplinary Rules 6-101 (A) (3), 7-101 (A) (2), and 1-102 of the Code of Professional Responsibility. Under these circumstances, there is nothing to support Stewart's claim that he was deprived of due process of law.

We have made an independent review of the record and have concluded that the findings of fact of the three-judge panel are supported by clear and convincing evidence. *Attorney Grievance Comm'n of Maryland v. McBurney,* 283 Md. 628, 630-31, 392 A. 2d 81, 82 (1978); *Bar Ass'n of Baltimore v. Posner,* 275 Md. at 256, 339 A. 2d at 660; *Bar Ass'n of Baltimore v. Marshall,* 269 Md. 510, 516, 307 A. 2d 677, 680-81 (1973). Accordingly, we adopt the panel's findings of fact. We further agree that Stewart's testimony that he had been under medical treatment since 1974 did not present a meaningful explanation for his inaction in these various matters. Indeed, even if we were to consider certain hospital records and doctors' reports which were not presented to the panel, we would reach the same result. The nature and dates

of Stewart's physical incapacities and hospitalizations would not excuse his failure to carry out his professional responsibilities. Accordingly, we adopt the panel's conclusion that Stewart violated the disciplinary rules.

Stewart's inexcusable and persistent neglect, manifested over a substantial period of time, when coupled with consideration of his prior suspension from the District of Columbia Bar following his conviction for the commission of an offense involving moral turpitude, demonstrates that he lacks the required capacity to continue to practice law and establishes that he is not worthy of holding himself out to the public as a practitioner of the profession. Among the basic attributes required of all members of the Bar is the determination to represent their clients carefully, diligently, and faithfully. Stewart does not possess this basic attribute.

Accordingly, Stewart's motion to remand, exceptions, and motion for rehearing are denied. The name of Marshall I. Stewart will be stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*