474 A.2d 211

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Whiteman Samuel TRUETTE, III.**

**Misc. (BV) No. 33, Sept. Term, 1982.**

Court of Appeals of Maryland.

May 2, 1984.

Melvin Hirshman, Bar Counsel, Annapolis, for petitioner.
Ralph W. Powers, Jr., Upper Marlboro, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against

Whiteman Samuel Truette III, alleging numerous violations of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9, to Judge James M. Rea of the Circuit Court for Prince George's County to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Rea filed detailed findings as follows:

"The Court finds, as a matter of fact, that Mr. Truette is a member of the Maryland Bar and that he was admitted to the bar in December, 1973, that through 1976 he worked with the law firm of Hoyer and Fannon, with no particular instances of complaint against him. In 1976, he went into partnership with David Shriver and this continued until December, 1980. His practice was general practice, slanted toward criminal practice, in addition to some commercial law practice. In December, 1980, the Respondent left the Prince George's County area, which was his area of practice, with no notice to his partner, leaving only a note to his wife saying he was leaving. At this time, he went to the State of North Carolina and got a job planting trees in the Greensboro region. From the date of his second marriage in May, 1977 through the present, he had marital difficulties. The Respondent characterized the marriage as a total failure. The Court further finds that through competent psychiatric reports ..., that during the year 1981, the Respondent sought psychiatric help. As a result thereof, he was diagnosed as suffering from depression, self-doubts, suicidal preoccupation, the desire to get away from it all, insomnia, with occasional reliance on alcohol for relief of symptoms. As a result thereof, the Respondent has sought active psychological and psychiatric treatment. The Court finds that there has been a high degree of recovery by use of this treatment.

. . . .

## "Complaint A

"The first is a complaint of Drew A. Marcks, as Treasurer of the Board of Directors of a condominium association.

The Court finds that the Respondent did attempt to represent said condominium association and that he made representation to said parties that there was a pending suit in the Circuit Court and indicated at one time that he had settled the case for $7,950.00. At that time, he forwarded to the complainant a check in this amount drawn on his escrow account. The Respondent, in his deposition ... admitted there was no money to cover said check in his escrow account. As a matter of fact, the case was not settled for said amount; but, on a later date, the Respondent gave the complainant a cashier's check for $2,500.00, which the Respondent admitted ... that he disbursed, and that at a later date, he indicated the case had been settled for $8,110.17. On ... the Respondent's deposition, he admits that in addition, a promissory note, in the amount of $4,000.00, was supplied to the complainant from the Respondent, making a total payment to the complainant in the amount of $6,500.00. There was a note prepared for $4,000.00, but the Respondent never signed said note. The Respondent, in his deposition did, however, confess a settlement agreement with the complainant in the amount of $6,500.00. It appears to the Court that $2,500.00 of this claim has been paid by the Respondent.

*"Complaint B*

"This is a complaint by Ronald W. Kegley in which the Respondent indicated that on a one-third contingency fee he would institute suit for an automobile accident and that he represented to the complainant Kegley that the case was subject to be tried in or about October, 1980 and that the case would be re-scheduled. Actually, no suit had been filed and there was no scheduled trial to be re-scheduled by any court. The Respondent did not inform the complainant that he had ceased to practice law and had migrated to the State of North Carolina. The Respondent indicated ... [in] his deposition that other counsel apparently took up the claim and that the statute of limitations had not run at the time he failed to represent the complainant.

*"Complaint C*

"This is the complaint of Ernestine Jean Bellosi, who testified in open court. The complainant indicated that the United States Internal Revenue Service had filed a lien against her for taxation and that the Respondent was retained to represent her in effectuating a discharge of this lien. The Respondent was given a $500.00 retainer. Summary judgment was entered in the U.S. District Court for Maryland in favor of the Federal Government against the complainant. The complainant had thought that a necessary answer for summary judgment had been filed by the Respondent; however, this apparently had not been filed and a summary judgment was granted. The complainant, in proper person, upon learning of the judgment, managed to have the summary judgment vacated, but later a final judgment was entered against the complainant after the District Court had given the complainant an opportunity to be heard.

*"Complaint D*

"This is a complaint of the Owl & Tortoise Corporation. The Court notes that the complainant in Complaint C, Ernestine Jean Bellosi, along with Joseph Amerigo Bellosi, was connected with this corporation. The corporation operated a business in Northwest Washington, D.C. and the corporation was having difficulty with its landlord, particularly concerning the heat and hot water in the building. In addition, the landlord took action against the tenant corporation to terminate the lease. The particular court in the District of Columbia gave judgment to the landlord. Mr. Truette made representation that an appeal would be taken from the landlord/tenant action. Apparently such an appeal was filed but not actively pursued and the appeal was dismissed. At which time, upon petition by the corporation, the appeals court allowed the appellant corporation to reinstate its appeal and new counsel was employed by the complainants to prosecute the appeal. Further, the Respondent indicated he would file suit against the said landlord

for destruction of certain property owed by said complainant/tenant and no such suit was ever filed.

"The Attorney Grievance Commission has petitioned under several of the Disciplinary Rules in each of the complaints, as noted. Complaint A also includes alleged violation of *Article 10, Section 44* of the *Annotated Code of Maryland.*

### "Conclusion—Complaint A

"It is the finding of this Court that the primary violation is DR 1-102(A)—Misconduct, (1) Violate a Disciplinary Rule, in that the Respondent did not properly inform his client. The Court is of the opinion that DR 1-102(A)(4), (5) and (6) are cummulative and repetitive of DR 1-102(A)(1) but that the same factual finding applies to each of these complaints.

"As to DR 2-110(A)—Withdrawal from Employment, the Court finds that the Respondent did violate DR 2-110(A)(2) and (3) by not properly withdrawing from employment or making total refund to the client.

"The Court finds that DR 2-110(B)(2), (3) and (4)—Mandatory Withdrawal; DR 6-101(A)(1), (2) and (3)—Failing to Act Competently; and DR 7-101(A)(2)—Representing a Client Zealously are repetitive to the factual situation which the Court has already found the Respondent in violation thereof and thereby suggests no action as to these particular charges.

"The Court finds that the Respondent did violate DR 7-102(A)(3) and (5)—Representing a Client Within the Bounds of the Law in that he knowingly made false statements as to the settlement of the complainant's claim. Further he violated DR 9-102(A)(1) and (2)—Preserving Identity of Funds and Property of a Client in that checks were forwarded to the complainant on bank accounts which did not have sufficient funds to cover them.

"The Court does find that the Respondent did violate *Article 10, Section 44(a)* of the *Annotated Code of Mary-*

*land,* pertaining to the Respondent's Escrow Account, and that he did, by his own admission, co-mingle funds.

## "Conclusion—Complaint B

"The Court finds that the Respondent violated DR 1–102(A)—Misconduct, (1) Violate a Disciplinary Rule; DR 6–101(A)—Failing to Act Competently and DR 7–101(A)(2)—Representing a Client Zealously. It is the finding of this Court that the Respondent represented that a law suit had been filed, which had in fact not been filed. Also, the Respondent left the area, not informing his client that such was the case.

"The Court is of the opinion that DR 1–102(A)(4), (5) and (6); DR 2–110(A)(3); DR 2–110(B)(3); DR 6–101(A)(1), (2), (3); DR 7–101(A) (3); and DR 7–102(A)(3), (5) are cumulative and repetitive. The Court is of the opinion that no action should be taken on these specific charges but the Court does find that these charges have been violated by the factual situation.

## "Conclusion—Complaints C and D

"Considering that some of the parties are the same in both complaints, it is the Court's finding that the Respondent violated DR 1–102(A)—Misconduct, (1) Violate a Disciplinary Rule; DR 2–110(A)(3)—Withdrawal from Employment; DR 6–101(A)(2) and (3)—Failing to Act Competently; and DR 7–101(A)(1) and (2)—Representing a Client Zealously. In each of these complaints, the Respondent failed to properly inform his clients of the condition of the claims against them and left the area without informing his clients that there were pending matters in appropriate courts that needed the skills and responses of a competent attorney; and, therefore, the clients were forced to enter their cases in proper person in order to assert their defenses and claims. In Complaint D, it became necessary to employ other counsel.

"The Court is of the opinoin that DR 1–102(4), (5) and (6); DR 2–110(B)(3); DR 6–101(A)(1); DR 7–101(A)(3)—(3-as to Complaint C only); DR 7–102(A)(3) and (5) are repetitive of the charges present as to these complaints. Even though there is a factual violation of these particular charges, the Court suggests no further action on these matters.

"In summary, the Court finds that due to the psychological problems which the Respondent suffered, he became seriously involved in alcohol. The Court further finds that upon receiving psychiatric treatment, the Respondent has returned to the practice of law in the State of Maryland and entered into practice with Mr. Robert E. Ammons, under Mr. Ammons' close supervision. Since his return, he has confined his practice to the criminal law filed in which field the Respondent has displayed a degree of expertise. It was reported to the Court that, at the time of the hearing, the Respondent was being retained in the State's Attorney's Office in Carroll County and that his practice there would be limited to the prosecution of criminal cases. The Court believes that the Respondent did come to grips with his psychiatric problems and sought competent treatment, which appears to presently be effective. The Court recognizes that any suggestions made are not binding, however, this Court does recommend that disciplinary action be taken against the Respondent, but that such action be short of total disbarment and, if he is allowed to conduct the practice of law, he should be limited to the criminal law field and, for some period of time, under the supervision of another member of the Bar."

The respondent took only one minor exception to Judge Rea's findings; he otherwise conceded that he had violated the disciplinary rules as found by Judge Rea. Bar Counsel, on the other hand, excepted to Judge Rea's findings in principal part on the ground that there was insufficient evidence to establish that Truette's mental condition existed at the time of the misconduct in this case or that the misconduct was caused thereby.

After hearing oral argument on the exceptions, we remanded the case to Judge Rea by order dated November 21, 1983; we noted therein that he "failed to make any specific finding concerning the proximate relationship between Respondent's illness and the serious acts of professional misconduct charged in this case." We also observed in our remand order that Truette's misconduct occurred over a substantial period of time prior to his having received any treatment for his mental illness or alcohol problem. We said further that the record was "devoid of evidence that the serious acts of misconduct charged in this case were caused by or referable to abuse of alcohol by the Respondent"; that the Director of the Legal Counseling Committee of the Maryland State Bar Association, Richard B. Vincent, had advised us subsequent to Judge Rea's initial findings that in June of 1982 he had evaluated Truette as an alcoholic; and that Vincent had expressed the view to us "that Respondent has now been rehabilitated from his alcoholic problem, regularly attends Alcoholics Anonymous, and is highly motivated to remain alcohol free in the future." Also noted in our remand order was that the State's Attorney of Carroll County had advised us by letter of October 25, 1983 that Truette was functioning well as an Assistant State's Attorney in that jurisdiction; that he is not permitted to engage in the private practice of law; and that his work is closely monitored. In view of this evidence, we directed that Judge Rea conduct a further evidentiary hearing

> "including the taking of testimony from Richard D. Vincent and from Respondent's present treating physician in Maryland, and for supplemental findings by the court concerning the causal relationship, if any, between Respondent's acts of misconduct and his mental condition, including alcohol abuse. At the hearing, the court should also determine (a) Respondent's willingness to limit his practice to the criminal law field while acting in a governmental capacity, his willingness to continue to receive medical treatment, as may be needed, and to subject

himself to continuing supervision of Richard D. Vincent; and the amount of money, if any, owed by Respondent to others, including the Clients' Security Trust Fund, as a result of his admitted misconduct in this case, together with a plan for repayment consistent with Respondent's financial ability."

We also ordered that Judge Rea make separate findings as to each alleged violation of the disciplinary rules, as charged in the disciplinary petition, without regard to whether he viewed the charges as repetitive or cumulative.

On February 8, 1984, Judge Rea, after conducting a further evidentiary hearing at which numerous witnesses testified, made supplemental findings of fact and conclusions of law. From the testimony of Mr. Vincent and Truette's present treating psychologist, Judge Rea concluded that Truette's mental condition, due to alcohol abuse, began to occur prior to the acts of misconduct charged against him in the disciplinary petition. Based on the evidence before him, Judge Rea found that Truette did not suffer "from a psychiatric mental condition at the time of his misconduct but, as described by Dr. Arnold Mysior, the treating psychologist, suffered from a neurotic condition and such character traits as to allow himself to succumb to alcoholism." Judge Rea concluded that Truette's "misconduct was causally connected ... [to] alcoholism and that said alcoholism had well-established itself ... prior to the acts of misconduct" in this case. He found that Truette was willing to limit his practice to the criminal law field, that he was willing to seek necessary medical, psychological and alcohol abuse treatment, and to subject himself to the continued supervision of Richard D. Vincent. Judge Rea also concluded that Truette "will repay the money owed to others, including the Clients' Security Trust Fund, with a plan for repayment."

Judge Rea revised his initial findings as to the acts of misconduct charged against Truette. He concluded that in addition to the violations found in his initial findings, Truette was also guilty of other transgressions: As to

Complaint A, Judge Rea found that the respondent had violated DR 1–102(A)(4) and (5), *i.e.*, that he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and conduct prejudicial to the administration of justice; that he violated DR 2–110(B)(3) by failing to notify his client that his alcoholism made it unreasonably difficult for him to effectively carry out his employment; that he violated DR 6–101(A)(2) and (3) in that he handled a legal matter without preparation adequate in the circumstances and was negligent in the course of that representation; and that he violated DR 7–101(A)(2) in that he failed to carry out a contract of employment for professional services. As to Complaint B, Judge Rea found that Truette violated DR 1–102(A)(4) and (5); that he also violated DR 6–101(A)(2) and (3) and DR 7–101(A)(3), the latter because he prejudiced or damaged his client during the course of the professional relationship; and that he also violated DR 7–102(A)(3) because he failed to disclose that which he was required by law to reveal. As to Complaints C and D, Judge Rea found that the respondent had violated DR 1–102(A)(4) and (5); that as to Complaint C only, he violated DR 2–110(A)(3) by failing to refund an unearned fee paid in advance; that he violated DR 2–110(B)(3) as to both Complaints C and D; that he violated DR 6–101(A)(1) as to both complaints, because he failed to associate with other attorneys competent to handle the matter with him; that as to Complaint C only, he violated DR 7–101(A)(3); that as to both complaints, he violated DR 7–102(A)(3); that as to Complaint C only, he violated DR 7–102(A)(5) by knowingly making a false statement of law or fact to the complainant Ernestine Bellosi; and that as to Complaint D, he violated the same rule when he represented that an appeal would be taken.

Responding to Judge Rea's supplemental findings, Bar Counsel observes that the evidence affirmatively disclosed that Truette's law partner, who saw him regularly during the period of his misconduct, was unaware of any problem which Truette had with alcohol. Moreover, Bar Counsel says that the expert witnesses, Vincent and Mysior, each

acknowledged that the "problem" that Truette had with misrepresentation might well have been a lifelong pattern unrelated to any difficulties which he suffered as a result of alcohol. Considering the seriousness of Truette's misconduct, Bar Counsel suggests that some period of suspension is appropriate in the circumstances. In this regard, he cautions that merely because Truette, subsequent to the institution of these disciplinary proceedings, appears to have mended his ways should not be considered unusual conduct in disciplinary cases.

After careful consideration of the record before us, we accept the factual findings of Judge Rea that a causal relationship existed between Truette's misconduct and his alcoholism. The evidence on remand clearly and convincingly portrays Truette as a young man whose alcoholism was the root cause of the professional misconduct with which he has been charged. Just as clearly, the evidence shows that Truette has made great strides in overcoming his disease while eschewing the private practice of law for the more structured practice of acting solely as a prosecutor in criminal matters.

As we said in *Attorney Griev. Comm'n v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981), the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. Manifestly, therefore, in considering the protection of the public, the severity of the sanction to be imposed for Truette's gross misconduct depends on the totality of the facts and circumstances of his case. All things considered, we shall overrule the exceptions of both parties and dispose of the case in this manner. We shall order that Truette be suspended from the practice of law for an indefinite period to commence on June 15, 1984. The suspension will not be implemented, however, if prior to that date Truette agrees by petition filed in this Court (a) to limit his legal practice to serving as an Assistant State's Attorney in the office, and under the direct supervision of, the State's Attorney for Carroll County; (b)

to participate in such activities as may be prescribed from time to time by the Director of the Lawyer's Counseling Program of the Maryland State Bar Association; (c) to continue under the care and treatment of Dr. Mysior or other treating psychologist as may be needed until such time as it is fairly concluded that further treatment is unnecessary; (d) that Truette submit a plan of repayment of any and all sums of money owed to others as a result of his misconduct; and (e) that Truette pay, prior to June 15, 1984, all costs of these proceedings. These conditions are subject to further Order of the Court. Truette must understand, however, that a breach of any of the above conditions, should he agree to them, will constitute grounds for implementation of the indefinite suspension. *See Attorney Griev. Comm'n v. Willemain*, 297 Md. 386, 466 A.2d 1271 (1983); *Attorney Griev. Comm'n v. Finlayson*, 293 Md. 156, 442 A.2d 565 (1982).

Bar Counsel may, prior to June 15, 1984, file any further petitions with the Court which he may deem essential to the final disposition of this case.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WHITEMAN SAMUEL TRUETTE III.