497 A.2d 149

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Paul J. COCKRELL.**

**Misc. (Subtitle BV) No. 4, Sept. Term, 1984.**

Court of Appeals of Maryland.

Sept. 10, 1985.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel to the Attorney Grievance Com'n of Maryland, Annapolis, for petitioner.

Russell J. White, Esquire, Towson, for respondent.

Paul J. Cockrell, Baltimore, pro se.

Argued Feb. 6, 1985 before MURPHY, C.J., SMITH, ELDRIDGE, COLE and RODOWSKY, JJ., ORTH, CHARLES E., Jr., Associate Judge of the Court of Appeals of Maryland (retired, Specially Assigned), and WILNER,

ALAN M., Associate Judge of the Court of Special Appeals of Maryland (Specially Assigned).

Reargued June 6, 1985 before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

PER CURIAM.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Paul J. Cockrell, alleging violations of the Code of Professional Responsibility. We referred the matter, pursuant to Md. Rule BV9 b, to Judge John F. Fader, II, Associate Judge of the Circuit Court for Baltimore County, to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Fader filed his findings and conclusions as follows.

"The allegations of misconduct focus on his handling of an automobile accident claim for Karen M. Kennedy arising from a collision on December 26, 1977. Mr. Cockrell did not properly handle the matter for Ms. Kennedy and did not keep her informed of the status of the litigation.

### Statement of Findings of Fact

"The Court finds the following facts by clear and convincing evidence:

"1. Mr. Cockrell was retained by Karen M. Kennedy to represent her in connection with her claim arising as a result of injuries (for which she was medically treated) received in an automobile accident which occurred on December 26, 1977. She was told by Mr. Cockrell that she had a cause of action as a result of the collision.

"2. Ms. Kennedy was a passenger in a vehicle driven by Eugene Baker and owned by William L. Smith. Another vehicle driven by Thomas Gray is alleged to have run into the vehicle in which Ms. Kennedy was riding.

"3. Mr. Cockrell received medical reports and a motor vehicle report in connection with the accident and the inju-

ries sustained. He did not communicate with prospective witnesses or the target defendants. Although there is some conflict between the admissions of fact introduced (Rule 2–424, formerly Rule 421), the Court determines that some minimum contact was made sufficient for the insurance company insuring Mr. Smith to deny coverage in connection with the accident.

"4. Suit was filed against Messrs. Baker and Smith on December 4, 1979 but in the suit filed by Mr. Cockrell, the allegations set forth facts placing Ms. Kennedy in the Gray vehicle despite the clear statements by Ms. Kennedy to Mr. Cockrell to the contrary. At one point, a check was received by Mr. Cockrell for evident PIP coverage from the insurance company affording coverage on the Gray vehicle. That check was returned by Mr. Cockrell to the insurance company because it represented funds to which Ms. Kennedy was not entitled.

"5. A default judgment was secured against Mr. Smith on February 27, 1981 but there was never any attempt to obtain a money judgment against him. That case was ended by a dismissal pursuant to Maryland Rule 530 on August 20, 1982.

"6. Mr. Cockrell had referred Ms. Kennedy's case to another attorney in February, 1979 but had received the file back sometime during July, 1979.

"7. Ms. Kennedy made numerous attempts to contact Mr. Cockrell concerning the status of the case. She made appointments with him which he did not keep. He did not return her telephone calls.

"8. Considering all the testimony, including the deposition of Frederick L. Bierer, Esquire, taken on August 9, 1984, the Court is unable to determine by clear and convincing evidence that any economic loss resulted to Ms. Kennedy because of the lack of action by Mr. Cockrell.

"This is a difficult issue. No doubt her injuries were serious enough that she should have been compensated. Her position as a passenger would lead to the supposition

she was not to blame for the accident and should have obtained a recovery from someone. Without more history and a better foundation, the Court is unable to say the recovery it supposes would have materialized. Even giving Ms. Kennedy the benefit of the doubt because of an expected loss of memory and facts occasioned by delay attributable to Mr. Cockrell, the testimony would not be elevated to a point sufficient for the court to make a determination against Mr. Cockrell in this regard. Under other circumstances and based upon a more complete fact situation, this situation might have contributed to a court finding that conduct is prejudicial to the administration of justice or adversely reflects on the fitness to practice law. No evidence sufficient to those determinations were produced here.

"Along these same lines, the court is unable to attribute any consequence to the failure of Mr. Cockrell to make timely claim with the Maryland Automobile Insurance Fund, Uninsured Division.

"9. There was testimony by Ms. Kennedy that Mr. Cockrell told her at one point that it was too late for her to obtain the services of another attorney to represent her. This occurred when she complained of a lack of attention on his part. When information of this sort arises during the course of testimony, it is a matter of some concern, especially in attorney grievance matters, even though it was not the subject of allegation by the Commission or discussion by the parties. Considering this testimony and especially the deposition of Mr. Bierer, the Court is unable to make any determination against Mr. Cockrell on this point.

### Conclusions of Law

"The Court determines that by his actions and omissions in this matter that Mr. Cockrell did unethically and unprofessionally violate the following Disciplinary Rules:

Appendix F Maryland Rules of Procedure

Code of Professional Responsibility

*Maryland Rule 1230*
1. *Disciplinary Rule 1–102*
   (A) A lawyer shall not:
      (1) Violate a Disciplinary Rule
2. *Disciplinary Rule 6–101*
   Failing to Act Competently
   (A) A lawyer shall not:
      (3) Neglect a legal matter entrusted to him

"After a reading of Canon 7 and Disciplinary Rule 7–101(A)(2), the Court is not convinced that the fact situation unraveled during the course of this hearing demonstrates an intentional failure to carry out a contract of employment entered into with a client for professional services. Since this matter was discussed in detail at the hearing, special mention is made of this conclusion in the Opinion.

"By inattention to the case he accepted, failure to properly process and allowing the case to be dismissed and because of almost complete failure on his part to keep his client informed and to respond to her reasonable requests for information, Mr. Cockrell has violated the two Disciplinary Rules above set forth.

\*   \*   \*   \*   \*   \*

"Ms. Kennedy did not receive the benefit of advice and information to which she was entitled. Neglect is evident. Although the Court is unwilling to determine that the consistent failure of Mr. Cockrell to respond to the reasonable inquiries of his client amount to more than neglect, the pattern of inattention is heightened."

Neither Bar Counsel nor Cockrell excepted to any of Judge Fader's findings. Bar Counsel recommended a reprimand as the appropriate sanction for Cockrell's misconduct.

Following a hearing in this Court, we remanded the matter to Judge Fader for the taking of additional evidence and for more specific factual findings concerning any economic loss actually suffered by Ms. Kennedy as a result of Cockrell's violations of the disciplinary rules, including loss

of PIP and other statutory benefits under Maryland Code (1979 Repl.Vol.), Article 48A.

Subsequently, Judge Fader supplemented his earlier findings as follows:

"Additional evidence has been taken and this Court determines that Karen M. Kennedy suffered economic loss in the amount of $605.00 representing medical expenses incurred as a result of violation of the Code of Professional Responsibility by Paul J. Cockrell.

Although the amount of medical expenses incurred is not contested, the issue of responsibility for the automobile accident is somewhat in doubt. Nevertheless, the Court is convinced that Karen M. Kennedy would have effected a recovery of $605.00 from the Uninsured Motorists Fund had the matter been properly handled by Paul J. Cockrell. The Court is not persuaded from the evidence that any recovery in excess of $605.00 would have been effected from either the Fund or otherwise."

After considering Judge Fader's supplemental findings, Bar Counsel adhered to his original recommendation that Cockrell be reprimanded. Cockrell took no exceptions to Judge Fader's supplemental findings although he appeared before us at oral argument to express some disagreement with the facts as found by Judge Fader.

After carefully considering the matter, we conclude that there is clear and convincing evidence to support Judge Fader's findings of fact. While we think Cockrell's misconduct comes perilously close to requiring a sanction greater than that recommended by Bar Counsel, we shall accede to that recommendation and impose a reprimand in this case.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV115c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST PAUL J. COCKRELL.

ELDRIDGE, Judge, dissenting:

In light of the basic facts found by Judge Fader, I would impose a sixty-day suspension in this case.