517 A.2d 1111
**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**R. Edwin BROWN.**

**Misc. Docket (Subtitle BV) No. 35, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 3, 1986.

**220**

Melvin Hirshman, Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Walter H. Madden, Rockville, for respondent.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH and ADKINS, JJ.

ADKINS, Judge.

The Attorney Grievance Commission, acting pursuant to Maryland Rule BV9, filed a petition seeking disciplinary action against R. Edwin Brown, a member of the Maryland Bar since 7 October 1941. We referred the matter to Judge Peter J. Messitte of the Circuit Court for Montgomery County. In his exhaustive "Findings of Fact, Conclusions of Law, and Recommendations," Judge Messitte rejected some of the Commission's charges, but nevertheless concluded that Brown had violated DR 1–102 (A)(1) (violation of a disciplinary rule), DR 1–102 (A)(6) (engaging in conduct that adversely reflects on fitness to practice law), and DR 6–101 (failing to act competently). We shall reject Brown's exceptions to Judge Messitte's report and impose a reprimand.

The events giving rise to the charges against Brown span an approximate decade from 1973 or 1974 to the early 1980's. They begin with his representation of Walter and Elmyra Hahn as to a real estate problem and end with his handling of their estates and related matters, Mrs. Hahn

having died in 1978 and Mr. Hahn in 1980. We shall discuss some of these events in more detail as we review Brown's 13 exceptions to Judge Messitte's findings and conclusions. Before we get to that, however, we must address a preliminary matter.

## I. *Brown's Motion to Dismiss*

Both before Judge Messitte and in this Court, Brown sought dismissal of the Commission's petition for lack of jurisdiction. The lack of jurisdiction, according to Brown, arises from improper action by the Commission's review board—improper action that not only flouted Brown's constitutional rights to due process, equal protection, and protection against former jeopardy, but also amounted to violation of the Commission's Administrative and Procedural Guidelines ("Guidelines")[1] and ran afoul of the doctrines of *res judicata* and estoppel. What happened was this:

On 16 May 1985 the review board met, with 12 of its 18 members present. It found Brown in violation of various disciplinary rules, and voted 12–0 to administer a private reprimand. Rule BV7.c. On 5 June 1985, however, the board met again. There were 11 members present, and it seems that some of the 11 had not been present at the 16 May meeting. In any case, some of the members who had been on board in May were not in June. Specifically, the "reporting member" was not present in June.[2] At the June meeting, those present voted unanimously to "reconsider" the 16 May action, and to prefer charges against Brown. Those charges were preferred, and resulted in the matter now before us. It is Brown's view that the 16 May vote of the review board was in some manner final, giving him a sort of "vested right" in a private reprimand, and that the

---

1. The Guidelines were recommended by the Commission and adopted by this Court pursuant to Rule BV3.b.(i).

2. When an inquiry panel recommendation is transmitted to the review board, the board chairman designates a board member to review it and to present it to the board. Guidelines, §§ 6–202, 6–203, 6–404. This member is known as the "reporting member."

"reconsideration" in June produced the constitutional transgressions and other effects we have summarized. Judge Messitte rejected these contentions, and so do we.

■ Brown has not explained why he was denied equal protection. His former jeopardy claim is inapposite, because lawyer discipline proceedings are not criminal proceedings. *Attorney Grievance Commission v. Stewart*, 285 Md. 251, 258, 401 A.2d 1026, 1029, *cert. denied*, 444 U.S. 845, 100 S.Ct. 89, 62 L.Ed.2d 58 (1979). Nor need we engage in an extended discussion of what process is due at the review board level. Proceedings before the review board are confidential. Rule BV8. The respondent is not entitled to notice of a review board meeting. Guidelines, § 6–206. Ordinarily, the respondent does not appear and is not represented before the review board. Sections 6–301, 6–303. The same is true with respect to Bar Counsel. Section 6–303. We have characterized board proceedings as investigatory, informal, and similar to grand jury proceedings. *Stewart*, 285 Md. at 259, 401 A.2d at 1030. "[I]f a lawyer is given notice and the opportunity to defend in a full and fair hearing before a [judge], the question whether he was accorded due process of law by the Inquiry Panel and the Review Board is ordinarily immaterial." *Id.*

■ *Stewart*, indeed, may well dispose of Brown's due process argument, but that is a question we need not decide. This is because Brown's notion that the board made a final decision in his favor, which could not be reconsidered, is simply wrong. On 16 May the board voted to reprimand Brown. A decision to this effect ordinarily is embodied in an "opinion" which is sent to Bar Counsel. Guidelines, §§ 6–501 through 6–507. The reprimand is then either served on the respondent, Rule BV7.c, or delivered to him or her personally by the board. Guidelines, § 6–507. So far as the record reveals, none of these things occurred after the 16 May vote. In short, that vote was never implemented or made final by the procedures intended to achieve that purpose. Therefore, there was no final action

for the board to "reconsider." Its 5 June action, the vote to prefer charges, was properly implemented and was its only final decision in Brown's case. The secret preliminary vote on 16 May vested no rights in Brown and the subsequent action in June denied him neither due process nor equal protection.

■■■ Since the 16 May action was not a final determination, by no stretch of the imagination could it give rise to a claim of either *res judicata* or collateral estoppel, even if we assume that those doctrines might somehow apply to action of the review board. If Brown, by "estoppel," means "estoppel by conduct," the argument is equally unavailing. That doctrine does not apply unless the conduct was relied upon to his or her detriment by the party asserting the estoppel. *See Addressograph-Multigraph Corp. v. Zink,* 273 Md. 277, 329 A.2d 28 (1974). Brown never knew of the 16 May action until after charges had been filed, and thus could not have relied on it to his detriment.

Brown's reliance on § 6-409 of the Guidelines is likewise without merit. That section, as it stood in May and June, 1985, dealt with reconsideration of a board decision on the basis of evidence not presented to the inquiry panel. It apparently was intended to apply only when the board had directed Bar Counsel to file charges, since § 6-409(A)(4) required a motion for reconsideration to be "received by the Chairman of the Review Board prior to the filing of charges by Bar Counsel" and § 6-409(C)(1) directed the chairman to "advise Bar Counsel to stay the filing of charges" when a proper motion to reconsider was received. Section 6-409 is simply inapplicable to the situation before us. In any case, as we have seen, the board's June action was not in fact a reconsideration of any final action taken in May. The May vote was preliminary; the final action occurred after the June vote.

■■ That the same persons who were present in June were not necessarily the same as those present in May is unimportant. The "reporting member," it seems, was not

at the June meeting, and Brown makes much of this, arguing that the board at the June meeting might not have had sufficient information to take the action it did. We cannot believe that review board members, in the performance of their important function, would unanimously vote to prefer charges if they had reservations as to the adequacy of the information before them. A substantial number of the members present in June must also have been present in May, when the "reporting member" reported. No doubt the inquiry panel recommendation, and other materials produced by that body, were available at the June meeting. Guidelines, §§ 6–404 through 6–406. Had members entertained doubts it would have been simple enough to defer a vote until the "reporting member" was present. In this case, the "reporting member" had informed the board chairman that he did not feel strongly in favor of a private reprimand.

There was a quorum present at the June meeting. Rule BV7.a. The vote to prefer charges complied with the numerical requirement of that rule. We can detect no reason why any of the matters we have discussed deprived either Judge Messitte or this Court of subject matter jurisdiction over this case. Brown's motion to dismiss is denied.

## II. *The Merits*

 We must now sketch the factual background that gave rise to the charges against Brown. According to Judge Messitte's findings, Brown began to represent Walter and Elmyra Hahn in 1973 or 1974. At that time they owned as tenants by the entireties two valuable farms in Frederick County, the "large" farm and the "small" farm. The latter was leased to Norman Todd, who also held an option to purchase the property. Todd went into bankruptcy and listed the "small" farm as an asset of the bankruptcy estate. Brown was retained to extricate the farm from that proceeding, and did so successfully. In 1975 he prepared wills, and later, codicils for the Hahns. At about the same time, Brown advised the Hahns of tax problems that might arise if the Internal Revenue Service included both

farms in the estate of the first of the Hahns to die. Pursuant to his advice, deeds were drawn and recorded whereby Mr. Hahn became the sole owner of the "large" farm and Mrs. Hahn the sole owner of the "small" one. Despite the disparate sizes of these properties, Brown obtained no independent appraisal of their values. Nor did he advise the Hahns to file either a federal gift tax return or an information schedule as part of their income tax returns.

In 1976, Brown learned that Mrs. Hahn might be interested in selling the "small" farm. Brown prepared a lease/option agreement in favor of a real estate partnership in which he was a general partner. The document disclosed the fact, although not the extent, of Brown's partnership interest. After considerable discussion with Brown, family members, and other advisors, the Hahns executed it. The option was never exercised, although the partnership made net payments over the years, under the lease agreement, in excess of $100,000.

Elmyra Hahn died in 1978 and Brown qualified as the personal representative of her estate. Shortly after that Mr. Hahn's health deteriorated. At the request of the Hahns' daughter, Brown arranged for the appointment of Robert Owen, the Hahns' accountant, as guardian of Mr. Hahn's property and estate.

Mrs. Hahn's will left a portion of her estate outright to Mr. Hahn and another portion to Mr. Hahn as trustee for others. Because of Mr. Hahn's physical condition, Brown arranged for Owen's appointment as substitute trustee. Brown never discussed with Owen the latter's duties as guardian or trustee.

When Brown filed the first and final administration account for Mrs. Hahn's estate, he failed to include the "small" farm as an asset. Moreover, he erroneously allocated the net estate between Mr. Hahn and the residuary trust. And it was not until 1982 that he executed and recorded a deed conveying the "small" farm to Mr. Hahn's guardian and to the substitute trustee. Additionally, while

Brown turned over all the personal assets of Mrs. Hahn's estate to Owen, he failed to indicate which portions passed to Owen in his capacity as guardian and which went to him as substituted trustee. Moreover, the federal estate tax return Brown prepared for Mrs. Hahn's estate contained a number of errors.

Walter Hahn died in 1980 and Brown qualified as personal representative of his estate. He received from Owen assets of Mrs. Hahn's trust (stocks, bonds, and bank accounts) that he should not have received; he commingled these with assets of Mr. Hahn's estate. He failed to see that Owen, as substitute trustee under Mrs. Hahn's will, delivered trust assets to the beneficiaries promptly. That distribution did not occur until 1982. He delayed for over a year after Mr. Hahn's death before seeing that a final guardianship account for Mr. Hahn was filed.

Brown also prepared a federal estate tax return for Mr. Hahn's estate. In it he wrongly included assets that should have passed to the beneficiaries of Mrs. Hahn's trust, as well as a gift that should not have been included. He understated the taxes, erred in the calculation of the tax on prior transfers, and improperly calculated commissions by claiming a 10 percent commission on the sale of real estate as well as the maximum statutory allowance under Md. Est. and Trusts Art., § 7–601, against a tax base that included the real estate.

On the basis of this history (and we have only recounted the highlights), the Commission charged Brown with violating the following disciplinary rules:

"DR 1–102 Misconduct.

"(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

\* \* \* \* \* \*

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

"DR 2–106 Fees for Legal Services.

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

"DR 5–104 Limiting Business Relations with a Client.

"(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

"DR 6–101 Failing to Act Competently.

"(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him."

For purposes of further discussion, we may divide into two groups the specific acts that were said to demonstrate violations of these rules.

The first group consists of instances as to which Judge Messitte found no violations. These include alleged incompetence in the preparation of the Hahn wills (DR's 1–102 (A)(6) and 6–101), alleged incompetence in severing the joint tenancies and related tax matters (*id.*), charges arising out of the transaction between Mrs. Hahn and Brown's partnership (DR 5–104 (A) ), failing to advise Owen of his duties as Mr. Hahn's guardian (DR's 1–102 (A)(6) and 6–101), and alleged incompetence in preparing Mrs. Hahn's estate tax return (*id.*). Judge Messitte also found no violation of DR 1–102 (A)(5).[3] Bar Counsel has not excepted to any of these findings, some of which were based on lack of clear and convincing evidence, and others on failure of Bar Counsel to give adequate notice of the alleged violation in his petition

---

[3] In the circuit court, Bar Counsel advised that he was not pursuing an alleged violation of DR 2–106(A) pertaining to excessive fees for services.

for discipline. *See Bar Ass'n v. Cockrell,* 270 Md. 686, 692–93, 313 A.2d 816, 819–20 (1974); Rule BV9.c.

The second group comprises the acts which Judge Messitte decided did constitute violations. At page 50 of his "Findings of Fact, Conclusions of Law, and Recommendations," he summarized these thus:

"Brown's violations of DR Rule 6–101 (A)(1)(2)(3) [incompetence] consist of [1] his failure to segregate assets due Mr. Hahn and the trust under Mrs. Hahn's will; [2] his failure to discuss with the substitute trustee under Mrs. Hahn's will his duties as such; [3] his omissions and errors in the preparation of Mrs. Hahn's First and Final Account; [4] his detention of the trust assets over an extended period of time; [5] his failure to execute and record an appropriate deed to the legatees of Mrs. Hahn's farm; [6] his failure to see to the prompt termination of Mr. Hahn's guardianship following his death; and [7] his numerous erroneous inclusions and entries on Walter Hahn's estate tax return."

Judge Messitte went on to find a violation of DR 1–102(A)(1) and to conclude that Brown's "collective incompetence reflects upon his fitness to practice estate law, in violation of DR 1–102(A)(6)."

As we have observed, Brown filed 13 exceptions to Judge Messitte's report. The first one presents the same arguments as Brown's motion to dismiss. For the reasons given in Part I of this opinion, we deny it.

Exceptions 2 and 3 sound a common note. The former points to page 48 of the judge's findings. After discussing in detail Brown's mistakes in the preparation of Mr. Hahn's estate tax return, Judge Messitte wrote:

"The Court finds that Brown's errors in connection with his preparation of Mr. Hahn's estate tax return, *taken together with his other errors in connection with his work on the Hahn wills and estates,* violate DR 6–101(A)(1)(2)(3)." [emphasis supplied]

The latter refers us to page 41. There, after discussing Brown's failure to execute and record a deed of the "small"

farm to Walter Hahn (or his guardian) and the trustee under Mrs. Hahn's will, the judge concluded

> *"In tandem with* other acts and omissions by Brown in handling the Hahn estates, these mistakes in administering Mrs. Hahn's estate demonstrate incompetence." [emphasis supplied]

It is Brown's position that since Judge Messitte found no violations in connection with preparation of the Hahn wills, he could not add a charge of incompetence on that head to his finding of incompetence in the preparation of Mr. Hahn's estate tax return, and conclude that both together constituted a violation of DR 6–101(A)(1), (2), (3), (Exception 2). By the same token, he asserts that Exception 3 demonstrates an impermissible coupling of unsubstantiated and substantiated incompetence.

Brown is correct in contending that the hearing court found no incompetence in connection with preparation of the Hahn wills. But it did find instances of incompetence in the handling of both estates. Our independent review of the record persuades us that those findings are supported by clear and convincing evidence; *see Attorney Grievance Commission v. Kerpelman,* 288 Md. 341, 420 A.2d 940 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). Thus, Exception 3 is without merit. As to Exception 2, any misperception it contains is cured by Judge Messitte's summary of conduct (quoted above) upon which he relied to reach his final conclusions as to ethical violations. That summary makes it clear that the judge in no way relied on any incompetence in will preparation when he made his ultimate decision. We deny these exceptions.

Exception 4 attacks Judge Messitte's finding that Brown was derelict in failing to secure prompt termination of Mr. Hahn's guardianship after Mr. Hahn's death. According to Brown that was the duty of Owen, the guardian. That may well be, but it does not follow that Brown, as personal representative of Walter Hahn's estate had no duty to take charge of all estate assets, and to do so expeditiously. *See*

Est. and Trusts Art., § 7–102 (1974, 1986 Cum.Supp.); *Bastian v. Laffin,* 54 Md.App. 703, 460 A.2d 623 (1983). The guardianship property was among those assets. The hearing judge found that "Brown's failure to see that any action was taken in the guardianship for over a year after Mr. Hahn's death was inexcusably dilatory on Brown's part." Brown has not excepted to that finding of fact. We believe that the judge was justified in concluding that "[t]aken together with the other circumstances described hereafter, this inattention does tend to demonstrate incompetence." The fourth exception is denied.

In Exception 5, Brown notes that Judge Messitte delineated four mistakes in the accounting and distribution of Mrs. Hahn's estate. One of these was Brown's failure to discuss with Owen the latter's duties as substitute trustee under Mrs. Hahn's will. Brown says that this was not a mistake in accounting or distribution. Perhaps not, but the fact that the judge may have misdescribed it does not make it any less an indication of incompetence. This exception is devoid of merit.

A common thread connects Brown's Exceptions 6–8 and 10. As to each of these he asserts that an error or omission of Brown's was so trivial or inconsequential that it could not, standing alone, support a finding of incompetence. The particular errors and omissions involved are: failure to include the "small" farm in Mrs. Hahn's first and final account (Exception 6); misallocation of assets of Mrs. Hahn's estate between Mr. Hahn and the trust (Exception 7); failure to execute and record a deed of the "small" farm to Mr. Hahn (or his guardian) and the trust (Exception 8); and the overstating of assets and deductions on Mr. Hahn's estate tax return (Exception 10).

We need not pause to consider the relative significance or insignificance of each of these mistakes, some of which may have been the result of simple carelessness or neglect, others accounted for by unfamiliarity with estate tax law. Nor do we quarrel with the proposition that a single error, considered in isolation, may not necessarily demonstrate

that a lawyer is incompetent. What Brown *refuses to* recognize is that Judge Messitte did not consider each of these shortcomings in isolation, nor was he required to. He listed seven errors or omissions on Brown's part during the handling of the Hahns' affairs. It was the total effect of these that persuaded him that Brown had violated DR 6–101(A)(1), (2), (3); it was Brown's "collective incompetence" that produced the violation of DR 1–102(A)(6). This does not show, as Brown suggests, that the whole is equal to more than the sum of its parts; it shows that the parts add up to a total that equals incompetence. Exceptions 6–8 and 10 are denied.

Exception 9 complains that Judge Messitte erroneously found that a court order was necessary to compel Brown to distribute trust assets to the beneficiaries. In reality, claims Brown, the court order directed Brown to distribute the assets to his successor personal representative. That, of course, is an unimportant distinction. What concerned Judge Messitte was Brown's "detention" of trust assets for "an inordinate period of time." And while Brown further argues that retention of trust assets would have been prudent pending a final determination of estate tort liability, the hearing judge found that

"[t]he purpose of the trust provision in Mrs. Hahn's will was to bypass estate administration upon Mr. Hahn's death and to expedite delivery of the trust assets to the trust beneficiaries.... [A]t a minimum, [Brown's] failure to act with dispatch demonstrates a lack of understanding of the very estate plan he implemented for Mrs. Hahn."

We do not believe this finding is clearly erroneous, nor can we conclude that Judge Messitte erred in considering this delay as evidence of Brown's lack of professional competence. We deny Exception 9.

Exception 11 takes issue with Judge Messitte's statement that a general practitioner "who wades into that thicket [estate tax practice], without associating with an expert, does so at his peril." Brown asserts that this foretells the

demise of the general practitioner. He adds that he is being subjected to a standard of "strict liability" because the evidence does not show that he knew or should have known that he needed to associate with an estate tax specialist.

As to the latter point, it can be no surprise to any general practitioner that, as the judge put it, "[e]state tax practice has always been a complicated field, full of traps and pitfalls, and becomes increasingly so each year." Any lawyer who glances at the Internal Revenue Code and its accompanying regulations must be aware of this.[4] Brown himself sought expert assistance to extricate him from the estate tax problems he had produced. Moreover, an expert witness for the Commission testified before Judge Messitte that Brown's errors amounted to "incompetence." He further testified that the estate tax returns "were sufficiently inadequately prepared that they indicate ... that he should have gotten outside assistance." Although there was evidence to the contrary, Judge Messitte was entitled to pick and choose among the evidence he would believe. *Attorney Grievance Comm'n v. Nothstein*, 300 Md. 667, 684, 480 A.2d 807, 816 (1984).

Moreover, Canon 6 of the Code of Professional Responsibility was adopted in Maryland in 1970, *see* Rule 1230, and contains certain ethical considerations that bear on this case. EC 6-1 points out that a lawyer "should accept employment only in matters which he is or intends to become competent to handle." EC 6-3 explains that a lawyer "generally should not accept employment in any area of the law in which he is not qualified." It adds that "[a] lawyer offered employment in a matter in which he is not and does not expect to become ... qualified should either decline the employment or, with the consent of his

---

4. For warnings of the need for special expertise in the areas of estate administration and taxation, within the context of DR 6-101(A), *see* Hirshman, *Briefly Speaking: Attorney Grievance Commission,* Md. Bar J., Aug. 1981, at 14; Hirshman, *Attorney Grievance Commission,* Md. Bar J., Aug. 1984, at 29.

client, accept the employment and associate a lawyer who is competent in the matter." Those exhortations place each member of the Bar on notice to consider his or her own competence prior to undertaking employment involving a particularly complex area of the law. We think there was sufficient evidence to support Judge Messitte's finding. *See Attorney Grievance Comm'n v. Myers,* 302 Md. 571, 490 A.2d 231 (1985) (hearing judge's findings are prima facie correct and will not be disturbed unless clearly erroneous).

With respect to the status of the general practitioner as an endangered species, the ethical considerations we have quoted chart the path the practitioner should follow. General practitioners must take careful thought as to their competence to practice in "specialty" areas.[5] The Code of Professional Responsibility is not designed to preserve or to eradicate general practitioners; among its purposes is protection of the public from unethical and incompetent lawyers. *Cf. Attorney Grievance Comm'n v. Pattison,* 292 Md. 599, 441 A.2d 328 (1982) (dealing with purpose of disciplinary proceedings in general).[6] If a general practitioner plunges into a field in which he or she is not competent, and as a consequence makes mistakes that demonstrate incompetence, the Code demands that discipline be imposed; that one is simply a general practitioner who

---

**5.** Although Maryland has not adopted a formal recognition of lawyer specialists, the existence—indeed the necessity—of at least *de facto* specialization has long been recognized. *See, e.g.,* McKay, *Competence and the Professionally Responsible Lawyer,* 29 Emory L.J. 971, 990 (1980); Clarke, *Recognition of Legal Specialists,* Md. Bar J., Fall 1979, at 16; Adkins, *Lawyer Specialization,* Md. Bar J., Fall 1978, at 30. Nor has the importance of special efforts to assure competence in those areas gone unnoticed. *See, e.g.,* Groner, *Oh, Say Can you "C"?,* Md. Bar J., March 1986, at 5; Hirshman, *Attorney Grievance Commission—Counsel Competency,* Md. Bar J., Dec. 1985, at 30.

**6.** The Code of Professional Responsibility as adopted in Maryland includes no preamble or comments concerning purpose. The new Maryland Rules of Professional Conduct, adopted April 15, 1986, and effective January 1, 1987, contain comments that illuminate the new rules. Although the new rules do not apply to this case, the comment

knew no better is no defense. *See Lewis v. State Bar of California*, 28 Cal.3d 683, 170 Cal.Rptr. 634, 621 P.2d 258 (1981) (attorney inexperienced in probate should have learned the procedures he improperly attempted to apply; one-year probation imposed); *State ex rel. Nebraska State Bar v. Holscher*, 193 Neb. 729, 230 N.W.2d 75 (1975) (inexcusable for attorney to attempt legal procedure without first ascertaining law governing that procedure); *Matter of Templeton*, 99 N.J. 365, 492 A.2d 1001 (1985) (no defense to charge of incompetence that attorney had only recently entered business law practice after eight years in government); *State ex rel. Oklahoma Bar Ass'n v. Hensley*, 661 P.2d 527 (Okla.1983) (attorney who handled estate incompetently disbarred); *Horne v. Peckham*, 97 Cal. App.3d 404, 158 Cal.Rptr. 714 (1979) (in malpractice case, general practitioner held to standard of specialist). Brown's eleventh exception is rejected.

Brown's twelfth exception argues that because Judge Messitte improperly found him in violation of DR 6–101(A), he could not be in violation of DR 1–102(A)(1). It also repeats his the "whole is greater than the sum of the parts" contention. Our denial of Exceptions 2–11 mandates similar treatment for Exception 12. Exception 13, which is a *reprise* of the "sum" argument, directed at the finding of violation of DR 1–102(A)(6) is rejected for the same reason.

### III. *The Discipline to be Imposed*

As we have often stated, the purpose of lawyer discipline is not to punish the errant lawyer, but to protect the public. *Myers, supra; Attorney Grievance Comm'n v Velasquez*, 301 Md. 450, 483 A.2d 354 (1984); *Nothstein, supra; Attorney Grievance Comm'n v. Truette*, 299 Md. 435, 474 A.2d 211 (1984); *Attorney Grievance Comm'n v. Montgomery*, 296 Md. 113, 460 A.2d 597 (1983). Brown has been found to

---

to new Rule 1.1 (Competence) is consistent with the standards applied by this Court in the past and may be helpful to an understanding of Canon 6. Among the concerns made obvious by the comment is the danger that "ill-considered action ... can jeopardize the client's interest."

have acted incompetently in certain matters relating essentially to estate administration and federal estate taxation. Yet he is a lawyer of long standing, with a previously unblemished record. He produced impressive evidence of his high integrity and principle, and of his acknowledged expertise in some areas, especially condemnation. Judge Messitte found that he was not guilty "of intentional wrongdoing" and that he was not "actuated by inappropriate motives or purpose...." He recommended a reprimand. *See Attorney Grievance Commission v. Truette,* 299 Md. 435, 474 A.2d 211 (1984) (Court of Appeals considered sanction recommendations of hearing judge). So does Bar Counsel.

Under the circumstances of this case, we agree. By this proceeding Brown has been warned to use care in undertaking representation in areas in which his competence is doubtful. In view of his experience and integrity, we have no doubt he will take this warning to heart, and will in future not err as he did in his representation of the Hahns. The severity of the sanction to be imposed is dependent on the facts and circumstances of each case. *Attorney Grievance Comm'n v. Pollack,* 279 Md. 225, 369 A.2d 61 (1977). A reprimand is appropriate. Rule BV11.b.4(iii); *see also, Attorney Grievance Comm'n v. Cockrell,* 304 Md. 15, 497 A.2d 149 (1985); *Attorney Grievance Comm'n v. Sinclair,* 299 Md. 644, 474 A.2d 1338 (1984); *Attorney Grievance Comm'n v. O'Neill,* 285 Md. 52, 400 A.2d 415 (1979) (reprimands imposed).

IT IS SO ORDERED; R. EDWIN BROWN SHALL PAY COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15.c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST R. EDWIN BROWN.